## CHARLES L. BISSELL *vs.* WILLIAM LEWIS *et al.*

The drawees to a bill of exchange had given to the drawer (who was their agent) a letter of credit, in the following words: "To enable you to make advances on grain, or other produce, to be consigned to us, or for us, at Oswego, during the ensuing fall, you are at liberty to make drafts on us, in amounts necessary for such operations, on such terms as you can make advantageously for us. Your drafts may be made payable here, or in New York City, at Corn Exchange Bank." This was an unconditional authority to the drawer of the bill to make drafts on the drawees.

*Held*, that as the law of the place whence the letter of credit was sent, and where the drafts were to be payable, controled the obligations of the writers of the letter; such letter, by the settled rule in New York, was an unconditional acceptance, and should be so construed here.

Case made after judgment from Wayne Circuit Court.

This was an action of assumpsit on the common counts, in which the plaintiff sought to charge the defendants, Lewis & Rathbun, as acceptors, and the defendant Fitch, as drawer, of a bill of exchange, and was tried in the Court below without a jury.

On the trial, it appeared that the plaintiff served, with a copy of his declaration, copies of the draft, and of the paper relied on, as an acceptance thereof, and gave notice that the same would be given in evidence on the trial of said cause under the common counts ; and on the trial the plaintiff gave in evidence a bill of exchange, a copy of which is as follows :

" $4,348.88          CHICAGO, November 10th, 1855.

Ten days from date pay to the order of C. L. Bissell, forty-three hundred and forty-eight, eighty-eight one hundredths dollars, value received, and charge the same to account of                          F. FITCH.

*To Lewis & Rathbun, Oswego, N. Y.*

The plaintiffs, to prove the due presentment of said bill of exchange for payment, its non-payment, and due notice thereof to said Fitch, gave in evidence the notarial certificate of the protest of said bill of exchange for non-payment, under the official seal of D. Mannering, a Notary Public, residing in the City of Oswego, New York.

The plaintiff then, for the purpose of proving the acceptance of said bill of exchange, gave in evidence a letter of credit, of which the following is a copy, and which was the only proof thereof given on the trial, to wit :

" EMPIRE GRAIN WAREHOUSE,
*Oswego,* Sept. 10th, 1855.

FREDERICK FITCH, Esq.:

*Dear Sir*—To enable you to make advances on grain or other produce to be consigned to us, or for us at Oswego, during the ensuing fall, you are at liberty to make drafts on us in amounts necessary for such operations, on such times as you can make advantageously for us. Your drafts may be made payable here or in New York City, at Corn Exchange Bank. Respectfully yours,          LEWIS & RATHBUN."

It appeared also that the defendants, Lewis & Rathbun, were, at the date of said letter of credit, partners in trade, doing business as produce and commission merchants at Oswego, New York, and that the said letter, including the signature, was in the handwriting of said Lewis. Upon this evidence the Court found, that the said bill of exchange was drawn by the defendant Fitch upon the defendants, Lewis & Rathbun, in favor of the plaintiff; that the letter of credit was given by said Lewis & Rathbun to the defendant Fitch; that the bill of exchange was received by the plaintiff on the faith thereof; that said draft was duly presented to said Lewis & Rathbun for payment, and payment refused, and the draft was duly protested for non-payment, and due notice of said presentment, non-payment and protest was given to the defendant Fitch.

Upon these facts the Court below held :

1. That said bill of exchange was drawn in pursuance of the terms, and under the authority of said letter of credit.

2. That said letter of credit was an unconditional authority to Fitch to make drafts on Lewis & Rathbun, and amounted to an acceptance of the draft in question by them ; and :

3. That it was not necessary for the plaintiff to show that the draft was drawn, or that the funds thereby raised were used for the purpose of making advances on grain, or other produce, to be consigned by said Fitch to said Lewis & Rathbun at Oswego.

Whereupon judgment was rendered in favor of the plaintiff for the amount of the said bill of exchange, with interest and costs of suit.

*G. V. N. Lothrop,* for plaintiff.

The doctrine that a promise to accept a bill to be thereafter drawn, shall be construed to be an actual acceptance in favor of parties who have taken the bill on the faith of the

promise, is recognized in Coolidge vs. Payson (2 *Gall.*, 232), and sanctioned by the Supreme Court in the same case (2 *Wheat.*, 66), although the Supreme Court of the United States, in that case, introduced, as a limitation of the doctrine, that the authority to draw must describe the contemplated bill in "terms not to be mistaken," or it would not be an acceptance. (*Coolidge* vs. *Payson*, 2 *Wheat.*, 66; *Schimmelpenich* vs. *Bayard*, 1 *Pet.*, 284; *Boyce* vs. *Edwards*, 4 *Pet.*, 120.)

On the other hand, the true and original doctrine, without the above restriction, is laid down in the Courts of New York, in Goodrich *vs.* Gordon, 15 J. R., 6; Bank of Mich. *vs.* Ely, 17 Wend., 508; Parker *vs.* Greele, 2 Ib., 545; Ulster Co. Bank *vs.* McFarland, 5 Hill, 434. So in Indiana, 2 Cart., 488. Besides, the authority was to draw bills payable in the State of New York, and the *lex loci* governs. (*Story Confl. L.*, § 280; *Story on Bills*, § 131; *Bayle* vs. *Edwards*, 4 *Pet.*, 123.)

*Backus & Harbaugh*, for defendants.

In order to charge a person as acceptor of a bill or draft, by virtue of an authority to draw, the authority must describe the bill or draft in terms not to be mistaken. (*Schimmelpenich* vs. *Bayard*, 1 *Pet.*, 284; *Boyce* vs. *Edwards*, 4 *Ib.*, 120; *A. L. C.*, 210; 8 *Port.*, 283; 3 *Ala.*, 581; 2 *Metc.*, 381; 18 *Ohio*, 126; 3 *Denio*, 556.)

The authority to draw, in this case, is, upon its face, conditional, and can have no existence until the condition is fulfilled. The burden of proof is upon the plaintiff, to show the paper on which he seeks to charge the plaintiff to have been drawn for the purpose designated in the letter of credit. (*Murdock* vs. *Mills*, 11 *Metc.*, 5; *Ulster Co. Bank* vs. *McFarlain*, 5 *Hill*, 432; *Nixon* vs. *Palmer*, 4 *Seld.*, 398.) A party dealing with a special agent, must inquire as to the

nature and extent of his agency, and keep within the limit. (*Fenn* vs. *Harrison*, 3 *T. R.*, 757; 1 *Pet.*, 264; 7 *B. & C.*, 278; 9 *Pick.*, 539; 11 *Metc.*, 14; 3 *Hill*, 262; 1 *Sandf. S. C. R.*, 262; 2 *A. L. C.*, 544; 18 *L. & E. R.*, 551; 29 *Ib.*, 323.)

The letter of authority was special, and to be construed like other contracts. Lewis & Rathbun intended to confine their liability to advances on grain, to be consigned to them. If Fitch had purchased a vessel or a house, and drawn on defendants to pay for it, they would not have been liable, for they never agreed to become so.

This being a special letter of credit, addressed to Fitch by name, and confided to him, gives no other person a right to act under it. (3 *Comst. R.*, 214.)

No construction can be given the letter of credit that would authorize any person to *discount* a draft drawn by Fitch on defendants.

By the Court, GREEN, J.

It is claimed by the defendants, Lewis & Rathbun, that the judgment of the Circuit Court in this case, ought to be reversed, because, as they insist :

1. The letter of credit was a conditional, special and limited authority to Fitch, to draw on them under circumstances and for purposes which are not shown to have existed; and :

2. That it did not amount to an acceptance of the draft in question.

It is assumed, on behalf of the drawees, that the authority conferred by the letter of credit extended only to the drawing of bills of exchange, as payment of advances which he should from time to time agree to make on grain, etc., to be consigned to or for them, at Oswego, and that, unless it is shown by the plaintiff that the bill of exchange in question was received by him as such advance, no recovery can be had upon it.

If such is the legal effect and meaning of the instrument, this conclusion is inevitable. It would be a special, limited,

or conditional authority, and the burden of proof would rest upon the plaintiff, to show that Fitch, in drawing the bill, acted within the limits of the authority given. There is no dispute as to what is the law in such a case. It is too well settled to admit of discussion here, and it is conceded by the plaintiff that, if Fitch had only a conditional authority, no draft made by him would bind the drawees, unless drawn within the prescribed condition.

It becomes important, therefore, to inquire what was the true intent and meaning of the letter of credit? Did Lewis & Rathbun intend to limit the powers of Fitch to the making of drafts *as advances* upon grain, etc., to be consigned to them; or did they intend to authorize him to draw on them for the purpose of raising the necessary means to enable him to make advances *in money*, as the business in which he was engaged might require?

In determining this question, the circumstances under which the letter was given, and the objects which were intended to be accomplished by it, must be considered. Lewis & Rathbun were partners in trade, doing business as produce and commission merchants at Oswego, in the State of New York, and the letter shows that, during the fall of 1855, Fitch was to be engaged in procuring consignments to be made to them in the course of their business as such, and in order to facilitate the operations contemplated, it would be necessary that Fitch should be enabled to make advances upon such consignments. For this purpose, instead of placing money in his hands, they gave the letter of credit in question, authorizing him to draw on them in amounts necessary for such operations.

They could not determine, in advance, what amounts might be required; but their agent, in whose judgment and discretion they confided, could raise such sums as the state of the business in which he was engaged might call for, by drafts on them, upon such times as he could make for their advantage,

and payable either at Oswego or in the City of New York, as might best suit the payees, and thus secure the object proposed by the letter of credit, the enabling of Fitch to make advances upon grain, etc.

Now, suppose that Fitch, with a view of promoting the interests of the business, had put forth a printed or written notice, that as agent of Messrs. Lewis & Rathbun, he would make advances upon such grain or other produce as should be consigned to them, through him, to be sold upon commission, would not persons proposing to make such consignments understand that the advances were to be made in *money?* and would they not feel disappointed, if, instead thereof, they were offered a bill of exchange on the consignees, payable in Oswego, or New York City, at ten, twenty or sixty days? Such, I apprehend, would be the case, and I can entertain no doubt that Fitch was fully and unconditionally authorized to make drafts pursuant to the terms of the letter, for such sums as in his judgment were necessary for the contemplated operations, and raise the money upon them from any one who would receive them upon the faith of such letter of credit.

But it is said that Fitch was only authorized to make drafts, to enable him to make advances upon grain or other produce to be consigned to or for the drawees, and that this is a limitation or condition, in conformity to which it should appear that the bill was drawn, and that if drawn in payment of a house or a vessel, they would be under no obligation to accept or pay it.

The bill was received by the plaintiff upon the faith of the letter of credit, and it is indisputable that he was bound to know the extent of the authority it conferred. It is in his possession, and a copy of it was served with the declaration, as evidence of acceptance of the bill. He produced it in evidence at the trial, and the presumption is that it was delivered, or at least shown to him when he received the bill.

But this bill is apparently drawn in accordance with the terms of the authority given.

It is for money for which Fitch makes himself accountable to the drawees, and it is, in itself, evidence that he received money for it from the plaintiff. This money *enabled* Fitch to make the advances contemplated, and that was all that the plaintiff was called upon to show. If Fitch afterwards appropriated the money to some unauthorized purpose, and if he intended to do so when the bill was drawn, that would not affect the plaintiff, unless he was cognizant of, and consequently a party to the fraud. Fraud cannot be presumed, and none having been proven, the plaintiff must be considered as having acted in good faith in receiving the bill. (*Bank of Mich.* vs. *Ely*, 7 *Wend.*, 508.)

The recital contained in this letter, preceding the clause conferring the authority to make drafts, merely sets forth the *cause* or *motive* for conferring it, but contains no condition or restriction upon its exercise. Fitch might have drawn immediately for such sums as, in his judgment, he might have opportunity to use in the proposed operations, though he should have failed afterwards to obtain a single consignment; and whoever should have received his draft upon the faith of the bill of credit, would have had the same rights in regard thereto, as if the avails had been advanced upon consignments previously engaged.

It is further insisted on the part of the drawees, that this is a special letter of credit, addressed to Fitch by name, and confined to him, and that it gives to no other person a right to act under it. In support of this position, the case of the Union Bank *vs.* Costar's Ex'rs (3 *Comst. R.*, 215), is cited. This is equivalent to denying that it is, in any sense, a letter of credit, for if no one but Fitch could act under it, he could not, of course, obtain any credit upon it. Such an assumption is not supported by the case cited, nor by any other reported case which has come under my observation. A

.58

letter of credit addressed to the person who is to obtain the credit, and not limiting it to the transactions with particular persons, is an open or general letter of credit, and authorizes any one to deal with him upon the faith of it, within the limits which it prescribes; but a letter addressed to a *third person*, whom alone it authorizes to give the credit, is special, and does not authorize another to act under it. (*See Carnegie and another* vs. *Morrison and another*, 2 *Metc. R.*, 381.)

We conclude, therefore, that there is no error in the ruling of the Court below, that the letter was an unconditional authority to Fitch to make drafts upon the defendants, Lewis & Rathbun.

The other question involved in this case, viz.: Whether the letter of credit amounts to an acceptance of the bill drawn in pursuance of its authority, and received upon the faith of it, if its decision depends upon the general law, is one of more difficulty, and it is much to be regretted that a question of so much practical importance to the great interests of commerce, should be left by the varying and conflicting decisions of the Courts of different States and Countries in so unsettled and unsatisfactory a state.

In the case of Pillans et al *vs.* Van Mierop et al. (3 *Bur.*, 1663), Lord Mansfield, and the other eminent Judges of England who sat with him, held a similar letter of credit to amount to an acceptance of the bills drawn under it.

The doctrine then held received some qualification in the subsequent cases of Pierson *vs.* Dunlop (*Cowp.*, 571); and Mason *vs.* Hunt (*Doug.*, 299); and now it seems to be doubtful whether any action whatever can be maintained in that country upon such a letter of credit. (2 *Story's R.*, 219.).

In some of the American States the doctrine, as laid down in Pillans et al. *vs.* Van Mierop et al., has been followed and adhered to; while in the United States Courts, and in the Courts of some of the individual States, it has received an important qualification; and it is held that a letter, written

within a reasonable time before or after the date of a bill of exchange, *describing it in terms not to be mistaken*, and promising to accept it, is, if shown to the person who afterwards takes the bill on the credit of the letter, a virtual acceptance, binding upon the person who makes the promise. (15 *J. R.*, 6; 17 *Wend. R.*, 508; 2 *Ib.*, 545; 5 *Hill R.*, 434; 2 *Wheat. R.*, 75; 1 *Pet.*, 284; 4 *Ib.*, 120; 8 *Porter R.*, 263; 3 *Ala. R.*, 581; 2 *Metc. R.*, 381; 18 *Ohio*, 126; 2 *Am. Leading Cases*, 210.)

Considering the diversity which appears to exist in the law as expounded in the different States, it becomes important to inquire, in the first place, how far the *lex loci contractus* is to govern and control the obligation of the parties to the instrument.

It is a general rule, that the *lex loci contractus* determines the nature and legal quality of the act done; whether it constitutes a contract; the nature and validity, obligation and *legal effect* of such contract; and furnishes the rule of construction and interpretation. (*Carnegie* vs. *Morrison*, 2 *Metc. R.*, 397.) In the case just cited the rule is very clearly stated, and illustrated by the Chief Justice in delivering the opinion of the Court. He remarks, that " a contract made in one country may contemplate the execution of deeds or other contracts, making payments or doing other legal acts in another, in regard to which the law in the foreign country where the act is to be done will govern the contract, and the obligation of such contract will bind the contracting party to do all such legal acts, according to the law of the country where they are to operate, so as to have their full legal effect. As, if a person in one country should contract to convey land in another, the general rule being that the *lex loci rei sitæ* furnishes the rule which regulates titles and conveyances of real estate, the true construction and legal effect of such contract would be, that the conveyance should be executed in such form as effectually to transfer the title according the

laws of the place where the land lies." "If the stipulation be, that the drawee shall accept a bill in a foreign country, and the law of that country requires that a valid acceptance shall be in writing, though not required by the law of the place where drawn, it is a contract that the drawee shall accept the bill in writing. (2 *Story's Rep.*, 229.)

The letter of credit now under consideration was executed at Oswego, in the State of New York, where the defendants, Lewis & Rathbun, resided, and the drafts made in pursuance of it were, by its terms, to be payable at Oswego, or at the Corn Exchange Bank, in the City of New York. The law of that State must, therefore, determine the nature and validity, obligation and legal effect of the contract, and furnish the rule for its construction and interpretation; and it must also determine what act of the drawees constitutes an acceptance of a bill drawn in accordance with its terms. If, by the law of that State, such a contract amounts to a virtual acceptance of the bill, then the drawees are bound by such virtual acceptance. To the adjudications of its Courts we must look for the rule by which this question is to be determined. For that purpose, it will only be necessary to examine a few of the principal cases in which this question was considered and decided.

In the case of Goodrich *vs.* Gordon, decided in 1818 (15 *J. R.*, 6), it was held by the Supreme Court of New York, that when a person, by writing, authorizes another to draw a bill of exchange, and stipulates to honor the bill, and a bill is afterwards drawn and taken by a third party on the faith of such written engagement, it amounts to an acceptance of the bill.

A letter was written by the defendant, Gordon, who was one of the joint owners of the sloop Hope, in December, 1813, to Napier, the master of the sloop, giving instructions for the voyage on which she was about to sail. The language of the engagement, relied on as an acceptance, was as follows:

"Should you unfortunately fall in with and be captured by an *English* cruiser, you will endeavor to ransom the vessel and cargo as low as possible, say not to exceed two thousand dollars; your draft on me or my brother will be duly honored." On the voyage, the sloop was captured by the *British* frigate Endymion, and was ransomed by Napier, the master, for two thousand dollars, for which amount he drew a bill of exchange on Gordon, payable· ten days after sight, and it was decided that the letter of credit was equivalent to an acceptance, and the plaintiff had judgment accordingly.

In the case of Parker *vs.* Greele (2 *Wend.*, 547), the promise relied upon as an acceptance, was in these words: "I have no objection to accepting for you, at three and four months, for $2,500, on the terms you propose." A bill was afterwards drawn by Stone, to whom the letter was given, in favor of the plaintiff, for the sum specified, payable four months from its date, and it was holden to amount to an acceptance by the drawee, and the judgment was subsequently affirmed in the Court of Errors. (5 *Wend.*, 414.)

The next case in which the same question came under review, was that of the Bank of Michigan *vs.* Ely (17 *Wend. R.*, 508), which was decided in 1837. The authority relied upon as an acceptance, was contained in a letter written by the defendant to his agents, Beach & Hudson, dated January 18, 1832, authorizing them to purchase wheat for his account, to the amount of twenty thousand bushels, and saying to them: "If you want more funds, you can make drafts on me, payable at the office of A. S. Marvin & Co., New York, due in August next; make them in sums of $1,000 each, and spread the time of their payment through the month, to the amount of $10,000. I have authorized Mr. D. D. Hatch to accept these drafts for me, when they are presented at Rochester." It will be observed that this letter of credit bears a very striking resemblance, in its· principal features, to the one which is now under examination, and, as several of the

questions raised in this case were the subject of discussion in that, it may be well to see what view was taken of them by the Supreme Court of that State. Chief Justice Nelson, in delivering the opinion of the Court, says : "It must be conceded in this case, that the promise to accept is in writing, and, in my judgment, it is an unqualified promise. 'If you want more funds, you can make drafts on me, &c., to the amount of $10,000.' Who was to determine whether more funds were wanted? Undoubtedly, Beach & Hudson. The question was referred to their sole discretion, and when decided, and the drafts drawn, the obligation to accept became imperative. As the discretion to draw was left solely to them, the terms of the letter are equivalent to an absolute promise to accept whenever they drew upon him, in the manner specified. It is not for him to set up an abuse of this discretion, to avoid the obligation, unless it be brought home to the plaintiffs, of which there is no pretence."

The last reported case, decided in New York, in which this question arose, was that of the Ulster County Bank *vs.* McFarland. It was heard in the Supreme Court in 1843, and in the Court for the Correction of Errors in 1846. (5 *Hill R.*, 432; 3 *Denio R.*, 553.) This case turned upon the question, whether, the bill was drawn in conformity with the authority given, but the question was also raised, whether, if it were so drawn, it amounted to an acceptance, inasmuch as it did not describe any particular bill. The letter of credit relied upon by the plaintiff in that case, was made by the defendant, and addressed to W. H. Deforest & Co., the drawees of the bill, in the following words : "I hereby authorize you to draw on me, at ninety days, from time to time, for such amounts as you may require, provided that the whole amount running and unpaid shall not exceed three thousand dollars. The above letter of credit to be good and binding for one year only from this date," and it was dated December 19, 1840.

Charles L. Bissell *vs.* William Lewis *et al.*

The action was brought against the defendant, as acceptor of a bill of exchange, drawn on him by Deforest & Co., on the 25th day of October, 1841, for $1,000, payable ninety days *after date.* The Supreme Court held, that the letter of credit authorized the drawers to make drafts upon the defendant, at ninety days after *sight,* but not at ninety days after *date,* and consequently that the defendant was not bound thereby to accept the bill upon which the plaintiffs sought to recover. Bronson, J., in delivering the unanimous opinion of the Supreme Court, remarks, upon the. character and legal effect of the letter of credit, as follows : " The letter of credit conferred an absolute authority upon Deforest & Co. to draw bills, and must, I think, be regarded as an unconditional promise to accept, within the meaning of the statute ;" and, after citing 1 R. S., 786, § 8; 17 Wend. R., 508; 2 Ib., 545; and 5 Ib., 414, he further says : " These cases- show also that the written promise to accept need not contain a particular description or identification of the bill to be drawn. It is enough that it be drawn in pursuance of the authority. The plaintiff received and discounted the bill upon the faith of the letter, and if it was drawn in pursuance of the authority; the Judge was right in charging the jury that there was a sufficient acceptance."

In the Court for the Correction of Errors, four of its members only delivered opinions, viz. : Senators Hand, Spencer, Talcott, and Lott. Senator Hand assumed that the letter of credit did not amount to an acceptance, because it did not describe the bill in terms not to be mistaken, etc., and cited the cases which support that position ; while Senators Spencer and Talcott distinctly maintained the doctrine of the cases decided in their own Courts, and concurred fully with Judge Bronson in his opinion upon that point ; and Senator Lott did not discuss the question at all, but sustained the opinion of the Supreme Court upon the other point in the case.

From this review of the decisions in the State of New York, there can be no doubt as to what is the rule of the commercial law of that State in regard to this important class of contracts, however the weight of authority may be in regard to the American law.  And if we were to look at the reason of the law, it would be very difficult to find any substantial ground for the distinction which is made in some of the Courts, between the effect of a letter which describes the particular bill to be drawn in terms, and one which does not; while it is conceded by all the American Courts, that the latter is a good and binding contract, for the violation of which damages may be recovered to the same amount as if it were regarded as an acceptance.  An acceptance is a contract between the drawee and the holder of a bill of exchange, that the former will pay it at maturity.  If a letter of credit, authorizing the drawing of bills, has any legal and binding effect upon the party making it, it is only because it is a *contract to do precisely the same thing.*  Why, then, should it not have the same legal effect?  That species of reasoning, which points to a different form of remedy in the one case, from that which is given in the other, savors more of the technical and useless refinement of special pleading, than of the liberal, just and progressive spirit of that plastic commercial code which adapts itself to all the new and ever-changing circumstances of commercial business, in all parts of the civilized world.

After the Court has ascertained, as it must do in all these cases, that the bill has been drawn under and in pursuance of the authority given, is it not as clear in the one case as in the other, that it is *such* a bill as the drawee promised to honor? such as he had in view, and foresaw *might* be drawn when he gave the authority?  If so, any distinction based upon the supposed intent of the drawee, or the greater certainty in the one case than in the other as to the particular

· bill in question, is evidently fallacious and unfounded. It seems to me, therefore, that, to be consistent, the American Courts must either adopt and adhere to the doctrine of the case of Pillans *vs.* Van Mierop, and those in New York before cited, or explode at once the whole American doctrine upon this subject, and follow the English Courts in declaring a promise to accept, contained in a letter of credit, to be of no binding effect whatever upon the party making it. But this case is decided by the *lex loci contractus*, and the Court does not determine what the general law is.

The judgment of the Circuit Court for the County of Wayne must be affirmed, with costs to the plaintiff.

Present, GREEN, WILSON, BACON, MARTIN, J. J.