STATE BANK OF BEAVER COUNTY, APPELLEE, V. TOM BRADSTREET, APPELLANT.

FILED APRIL 24, 1911. No. 16,406.

1. **Appeal: BILL OF EXCEPTIONS: CERTIFICATION.** The rule is settled that this court will, on its own motion, refuse to consider a document appearing in the record and purporting to be a bill of exceptions when not authenticated as such by the certificate of the clerk of the trial court.

2. **Bills and Notes: ACCEPTANCE.** The telegram set out in the opinion *held* to be an unconditional acceptance of the draft sued upon.

APPEAL from the district court for Hall county: JAMES R. HANNA, JUDGE. *Affirmed.*

*Harrison & Prince,* for appellant.

*Bayard H. Paine, contra.*

FAWCETT, J.

The petition alleges that one J. A. McMillan presented to plaintiff bank the following draft: "Beaver, Utah, 11-6 1906. Tom Bradstreet; Pay to the order of State Bank of Beaver County $250, two hundred and fifty 00-100 dollars"—and requested plaintiff to cash the same, which plaintiff declined to do; that McMillan then requested the draft to be forwarded for collection; that thereafter McMillan returned to plaintiff bank, after said draft had been forwarded for collection, and again requested plaintiff to cash the same, which plaintiff refused to do unless the draft should first be accepted by the defendant upon whom it was drawn; that at the request of

McMillan plaintiff sent a telegram to defendant, asking him if he would pay the draft, and received from defendant the following: "November 7, 1906. To Beaver County State Bank, Milford, Ut. Will pay McMillan's draft on me two fifty for horses. T. Bradstreet"; that plaintiff, relying upon this acceptance, paid McMillan the full sum of $250 and became the owner of the draft; that the draft, after being forwarded through plaintiff's regular correspondents, was in due and regular course of business, upon the 14th day of November, 1906, presented to defendant for payment and payment was refused; that said draft was thereupon protested for nonpayment at a cost of $3.10, which the plaintiff was compelled to pay— and prays judgment for the face of the draft, with interest and protest fees.

The answer admits the corporate capacity of plaintiff, the drawing of the draft by McMillan, the sending of the telegram by defendant, and his refusal to pay the same, and then proceeds to set out the business relations existing between defendant and McMillan, and a custom under which defendant from time to time made loans to and accepted drafts made by McMillan; that the acceptance in question was a conditional acceptance, which did not bind defendant unless McMillan used the proceeds of the draft for the purchase of horses to be shipped to defendant; that the money was not used for such purpose, but was used for other and different purposes, and that all of these things were "well known to plaintiff, or could, by the exercise of ordinary care, have been known to plaintiff." The reply was a general denial. Trial to the court. Judgment for plaintiff. Defendant appeals.

The question as to whether or not the facts alleged by defendant as an affirmative defense were established upon the trial could only be determined by an inspection of a bill of exceptions. We find, upon examination, that there is attached to the transcript a document purporting to be a bill of exceptions, but no attempt at authentication of the bill is made, as required by section 587b of the code.

We have repeatedly held that in such a case such purported bill of exceptions cannot be considered by us for any purpose, and that this court will, on its own motion, refuse to consider a document appearing in the record, and purporting to be a bill of exceptions, which is not authenticated by the certificate of the clerk of the court below. *Palmer v. Mizner,* 70 Neb. 200.

The only question before us then is: Is the judgment sustained by the pleadings? It is contended that the acceptance upon its face shows it to be a conditional acceptance; that the words "for horses" constituted such a limitation upon the acceptor's liability, that he cannot be held unless it appears that the proceeds of the draft were used for the purchase of horses. This contention implies that it was the duty of the plaintiff, when it cashed the draft for Mr. McMillan, to follow him out of the bank and see to it that he used the proceeds of the draft for that purpose, and no other. Such is not the law. *Bissell v. Lewis,* 4 Mich. 450, and *Coffman v. Campbell & Co.,* 87 Ill. 98, are in point and the reasoning of those cases meets our approval. In *Coffman v. Campbell & Co.,* the acceptance was: "Will pay A. Harper draft, twenty-three hundred dollars, for stock." The exact similarity of that acceptance and the one under consideration here is apparent. In the syllabus in that case it is held: "A telegram agreeing to accept a person's draft for a certain sum, 'for stock,' is not a conditional contract, but an absolute undertaking to accept and pay the same; and a party discounting the draft, on the faith of such telegram, is entitled to recover the amount of the party so agreeing to accept. * * * In a telegram to a party, in relation to a draft, that the person sending the dispatch 'will pay A B's draft, twenty-three hundred dollars, for stock,' the words, 'for stock,' subserves no purpose as between the payee and the acceptor. At most, those words are but an indication of the nature of the consideration as between the drawer and the acceptor."

The reasoning of the majority opinion in *Coffman v.*

*Campbell & Co.,* concurred in by five of the seven justices, is, we think, unanswerable.

AFFIRMED.