# First National Bank of Chicago

*v.*

# Pettit & Smith.

Checks — *liability of the drawee to the holder of a check.* Where a party obtains credit at the bank for a certain amount, and for a specific purpose, and the bank agrees to pay his checks to that amount, after the credit thus negotiated has been overdrawn, the bank is under no obligation to pay any more checks drawn by that party, although they may be drawn in favor of persons who have contributed to the purpose for which the drawer obtained the credit with the bank, and were drawn on that account, and the deficit in the amount to be drawn against arose from the payment by the bank of checks drawn for a purpose foreign to that for which the bank agreed to give the credit to the drawer. In such case there is no privity between the bank and the holders of the rejected checks which will in any way render it liable to them.

Appeal from the Recorder's Court of Chicago; the Hon. Evert Van Buren, Judge, presiding.

This was an action of assumpsit brought in the court below by Pettit & Smith against the First National bank of Chicago, to recover the amount of a check drawn by George M. Allen upon the bank, and in favor of the plaintiffs. A trial resulted in a finding, and judgment in favor of the plaintiffs. The defendant thereupon took this appeal.

The grounds upon which the plaintiffs sought to recover are set forth in the opinion of the court.

Mr. C. Beckwith, for the appellant.

Messrs. Scates, Bates & Towslee, for the appellees.

Mr. Justice Lawrence delivered the opinion of the Court:

On the 14th of June, 1865, George M. Allen made an arrangement with the First National bank of Chicago, by which it was to pay his checks to the value of a cargo of corn, amounting to between $8,000 and $9,000 upon the security of the bill of lading. He was to buy the corn as a broker, upon

the order of Charles J. Mann, of Buffalo, upon whom he was to draw his draft in favor of the bank for the amount of its advances, and the bank was to hold the bill of lading as security for the payment of the draft. At the close of bank hours, on the 15th of June, the bank had paid his checks to an amount exceeding ten thousand dollars. After the credit negotiated by him with the bank had been thus overdrawn, Pettit and Smith, the appellees, presented a check drawn by Allen in their favor, for corn purchased of them toward the cargo, and amounting to $998.86. The bank refused payment, and Pettit and Smith brought this suit.

It appears that among the checks paid by the bank was one in favor of Adams & Co., for $5,936.74, which bore date on the 13th of June, and was not given for corn, but which was not presented until the 14th, after the arrangement with the bank was made. Allen kept a deposit account with the bank, and, doubtless with a view of keeping his account good, and protecting his corn checks, he deposited with them, after bank hours, on the 14th of June, a check drawn in his favor by Daggett & Whiteside, on the State Savings institution, for $5,798.88, which was entered to his credit on his bank book, on the 15th. This check, on presentation, was dishonored, the drawers having failed, and, on the same day, the 15th, Allen, being informed that the check had been dishonored, drew his own check in favor of the bank for the same amount.

It is said the bank had not the right to pay the check of Adams & Co., from the payment of which the deficit arose. But the fallacy of the argument consists in the assumption that this arrangement was effected with the bank by Allen, as agent merely of Mann, and upon the credit of the latter, and that the case is to be treated as if Mann had made a special deposit, through the agency of Allen, to his own credit, to be checked out for the purchase of corn and for that only. But, in fact, there was no privity whatever between the bank and Mann. The money was not advanced upon his credit, as suggested by appellees' counsel, but on the credit of the corn itself, for which the bank was to hold the bill of lading. Mann stood to them

as a mere name, upon which a draft was to be drawn, and when it should be paid the bank would surrender the corn. Any other grain dealer in Buffalo would, no doubt, have answered the purpose of the bank quite as well. The credit established by Allen with the bank was merely a personal credit to the benefit of his general account as a depositor, and although the bank might not have been obliged to pay any check that was not drawn toward the purchase of the cargo of corn, it clearly had the right to pay any of Allen's checks drawn by him in good faith, and not with a view of defrauding others. And that there was any intent to defraud any body, either on the part of Allen or the bank, is not pretended. If other persons thought proper to sell him corn and take payment in his checks, they did it on his credit merely, and not upon any promise by the bank to pay his checks. It is not claimed that any communication took place between the appellees and the bank, until they presented their check for payment, and Allen's credit was already overdrawn. It is not pretended that the bank had ever promised them to pay Allen's checks.

Some stress is laid upon the fact, that Allen drew his check in favor of the bank, to take up the dishonored check of Daggett & Whiteside. But in our view, that transaction was wholly unimportant. It amounted, on either side, to simply nothing. The bank took the Daggett & Whiteside check for collection, and gave Allen a merely nominal credit of a few hours, and, on the dishonor of this check, Allen drew his own check to annul the nominal credit he had received, and restore the proper balance to the account. It amounted simply to giving the bank a worthless piece of paper in the morning and taking it back again in the afternoon.

The case is simply this, Allen gets a credit with the bank, upon a promise to deliver to it a cargo of corn that he proposes to buy, of $9,000. The bank pays his checks until his account, including this credit, is overdrawn, and refuses to pay further. We cannot see why it should. It receives the bill of lading for the corn according to agreement, and a draft drawn against

it, and from the proceeds re-imburses its advances.    We do not see why it should not be permitted to do so, or upon what principle it should be required first to pay a debt due from Allen to persons with whom it has had no transactions, and who, if losers, are so by no fault of the bank.    The debt due from Allen to it is as meritorious as that due the appellees, and there is no reason why the bank should be required to surrender its securities or their proceeds.    The judgment must be reversed and the cause remanded.

*Judgment reversed.*