## MURRAY NELSON

### v.

## THE FIRST NATIONAL BANK OF CHICAGO.

1. CHECKS—*liability of the drawee of a check to the holder—on a promise to pay it.* Where a bank promised A that it would pay his checks for the purchase of a cargo of corn, which promise the drawer communicated to the payees of the checks, who thereupon sold the corn to A and took his checks therefor, on the faith of such promise: *Held*, that such promise was binding upon the drawee, and that an action for the breach of the promise to accept, could be maintained against him.

2. FORMER DECISIONS. This case differs from that of *The Bank* v. *Pettit & Smith*, 41 Ill. 492, in the controling fact, that there, it did not appear the holder took the check on the faith of the promise of the bank to pay it, while in this case the holder did receive the check solely on the faith of such promise.

3. STATUTE OF FRAUDS—*a parol promise to accept or pay an existing or non-existing check or bill.* A parol promise to accept or pay an existing or non-existing bill, is not within our statute of frauds, and is valid.

4. JURISDICTION IN CHANCERY—*where there is a remedy at law.* Where the holder of a check received it solely upon the faith of the promise of the drawee to pay it, his remedy at law is so complete, that it seems, if the objection be taken at the proper time, a court of chancery would not retain a bill filed by him to enforce the liability of the drawee.

5. But where such a bill was filed, and the cause was brought to the appellate court, no objection being taken to the jurisdiction in chancery, the case was considered upon its merits, it not being regarded a case in which a court of chancery, for its own protection, need refuse to exercise jurisdiction.

APPEAL from the Superior Court of Chicago; the Hon. JOHN A. JAMESON, Judge, presiding.

This was a proceeding in chancery, instituted by the appellant against the appellee, in the Superior Court of Chicago, to compel appellee to pay certain checks drawn upon it by one George M. Allen, and which checks, it was alleged, appellee had promised appellant it would pay, and which were thereupon taken by appellant on the faith of such promise, for a

cargo of corn sold to Allen. On the hearing in the court below, the bill was dismissed for want of equity, to reverse which, the case is brought to this court by appeal.

Messrs. MILLER, VAN ARMAN & LEWIS, and Messrs. WILLIAMS & THOMPSON, for the appellant.

Messrs. BECKWITH, AYER & KALES, for the appellee.

Mr. JUSTICE LAWRENCE delivered the opinion of the Court:

This case arises upon the same state of facts set forth in *The Bank* v. *Pettit & Smith*, 41 Ill. 492, with one material and controlling difference. In this case, it appears that the promise of the bank to pay the check drawn by Allen in purchase of the cargo of corn, was communicated to appellant both by Allen himself and by Hutchinson, one of the bank directors; and appellant's then partner, who sold the corn, testifies he knew Allen was not pecuniarily responsible, and that he took the check solely on the credit given by the promise of the bank to pay. This fact did not appear in the Pettit & Smith case, and we presume did not exist. The question now is, whether, on this new state of facts, the bank must respond upon its promise.

If the appellant had sold his corn, as Pettit did, merely on Allen's credit, and without any knowledge that the bank had undertaken to pay his checks, there would be no ground for holding it liable on its promise, and no reason why it should not be permitted to apply all the money coming into its hands in payment of the debt due to itself, rather than to the payment of that due appellant. A promise to Allen to pay his checks, if it had not come to the knowledge of appellant, and been the basis of the sale made by him to Allen, would have created no privity between him and the bank, and as the promise would have been without benefit to the bank, and

without injury to the appellant, if unaware it had been made, it would have been absolutely without consideration as between these parties, and therefore not binding. All the cases agree in holding, that in order to make a promise of this character binding in favor of a person who has received a bill, the bill must have been taken on the faith of the promise. But where it has been so taken, it is now the settled American law that the promisor must make his promise good.

The rule was originally laid down in the same way in England, in the case of *Phillips* v. *Van Mierop*, 3 Burr. 1663, which was twice argued and very fully considered by Lord MANS-FIELD and the other judges of the King's Bench. It was subsequently shaken by Lord KENYON, in *Johnson* v. *Collins*, 1 East 98, and has since been fully overruled by the Court of Exchequer, in *Bank of Ireland* v. *Archer*, 11 M. & W. 385. It is held in the last case, and now seems to be the settled law of that country, that a promise to accept a non-existing bill is not binding as an acceptance, even where the bill is discounted for the drawer upon the faith of such promise. The court, however, express no opinion as to whether an action would lie for a breach of the promise to accept, although they refer to Beawes' Lex Mercatoria, p. 466, as laying down the rule that a promise to accept is a contract, for the breach of which an action will lie, but is not an actual acceptance.

In this country, the leading case is *Coolidge* v. *Payson*, 2 Wheat. 66, in which Chief Justice MARSHALL, after reviewing the English cases up to that date, lays down the rule, "that a letter written within a reasonable time before or after the date of a bill of exchange, describing it in terms not to be mistaken, and promising to accept it, is, if shown to the person who afterwards takes the bill on the credit of the letter, a virtual acceptance, binding the person who makes the promise." This rule has been constantly followed by the courts of this country, the only point of dispute being as to the degree of accuracy with which the promise to accept must describe the non-existing

bill, and it is objected in the present case, by counsel for appellee, that the promise to pay by the bank did not sufficiently identify the checks to which the promise was to be applied, and the case of *Boyce* v. *Edwards*, 4 Peters, 122, is cited as an authority in point. The authority of that case is certainly to the effect, that the promise of the bank cannot be treated as a technical acceptance, for want of identification of the checks. We may be permitted to say, however, that the difference between a promise to accept a particular bill or check to be thereafter drawn, and a promise to accept all checks which a person might draw for a specific purpose, is so extremely technical and refined that we should be inclined, where the plaintiff had received the check or bill upon the faith of the promise, and had sued on the promise as an acceptance, to hold with the Supreme Court of Michigan, in *Bissell* v. *Lewis*, 4 Mich. 450, that it was a distinction without a difference. It seems to us, a fair construction of the language of Chief Justice MARSHALL would require, not that the promise should describe the bill to be drawn and accepted, by its date and amount, and the name of the drawee, as that would be generally impossible; but merely in such a mode that there could be no possible doubt as to the application of the promise to the bill to be drawn. A description of sufficient certainty could thus be made to apply to a series of bills, as well as to one bill. In the present case, for example, there can be no difficulty in applying the promise of the bank to the check under consideration. Indeed, in this very case of *Boyce* v. *Edwards*, the court, while giving so technical a construction to the language of Chief Justice MARSHALL, say the reason of the rule is, " that the party who takes the bill upon the credit of such authority may not be mistaken in its application." If that be the reason of the rule, it would seem that any description should be held sufficiently certain which would leave no doubt that a particular bill or series of bills was intended by the promise, and had been negotiated upon its faith.

The question, however, whether the promise in this case can be considered a technical acceptance, we do not propose to decide, and it is indeed of no practical importance, for in this same case of *Boyce* v. *Edwards*, on which counsel for appellant rely as showing the promise not to be an actual acceptance, it is held that, though a recovery cannot be had upon the bill as an accepted bill, it may be had in an action founded upon a breach of the promise to accept. In an action of the latter character, the court say, " the evidence may be of a more general character, and the authority to draw may be collected from circumstances, and extended to all bills coming fairly within the scope of the promise." The court further say, " as respects the rights and the remedy of the immediate parties to the promise to accept, and all others who may take bills upon the credit of such promise, they are equally secure and equally attainable by an action for the breach of the promise to accept, as they could be by an action on the bill itself." That a recovery may be had in an action of the character above indicated, is also held in *Cassell* v. *Dows*, 1 Blatchford, 335; *Russell* v. *Wiggins*, 2 Story, 213 ; *Lonsdale* v. *Lafayette Bank*, 18 Ohio, 126; *Bissell* v. *Lewis*, 4 Mich. 450. See also *Stone* v. *Logan*, 9 Mass. 55 ; *Carnegie* v. *Morrison*, 2 Metc. 406 ; *Goodrich* v. *Gordon*, 15 Johns. 6; *Schimmilpennich* v. *Bayard*, 1 Pet. 264.

That the promise of the bank in this case so far identified the checks to which it was to be applied as to enable the appellant to maintain an action for its breach, is settled by the foregoing authorities and by others which might be cited.

It is also objected by counsel for appellee that this promise should have been in writing. It is the settled law, and has been twice decided by this court, that a parol promise to accept an existing bill is valid. *Jones* v. *Council Bluffs Bank*, 34 Ill. 319 ; *Mason* v. *Dousay*, 35 ib. 424. If a verbal promise to accept an existing though non-present check, is binding, we are wholly unable to discover any reason why it should

not be equally so as to a non-existing bill, under the authority of the American cases, in none of which is any distinction made between parol and written promises of this character, except where a written promise is expressly required by statute. A parol promise to accept or pay a non-existing bill is no more within our statute of frauds than would be a similar promise to pay an existing bill, and clearly neither is within the statute, for such a promise, as stated by Mr. Justice STORY, in *Townsley* v. *Sumrall*, 2 Pet. 182, " is an original promise to the purchaser, not merely a promise for the debt of another." Such a promise gains no additional validity or obligation from being in writing. It is merely susceptible of clearer proof. If in writing, it is binding as to non-existing bills only where the bill is received upon its faith, and when this takes place it has neither less legal nor moral obligation because made in parol. The very question arose in the case just cited from 2 Peters, and the first point made in that case by counsel for the plaintiff in error, was, " that a parol promise to accept a non-existing bill does not constitute a contract for the breach of which an action may be maintained." The court, however, held the parol promise to be valid.

This is a proceeding in chancery, and the remedy at law is so complete that we see no ground why an objection to the jurisdiction, if taken in the court below, would not have been sustained. But none was taken by the pleadings, and none has been raised here in the argument. The case has been argued upon its merits, and we presume it is the wish of the parties to have it decided upon that ground, and an end put to the litigation. As no objection has been raised to the jurisdiction, and as the case is not one in which a court of chancery, for its own protection, need refuse to exercise jurisdiction, we reverse the decree of the Superior Court dismissing the bill for want of equity, and remand the cause.

*Decree reversed.*