# MURRAY NELSON ET AL.
## v.
# GEORGE W. RAVENS ET AL.

PAROL AGREEMENT TO PAY A NON-EXISTING BILL.—R. & Son became indebted to N. & Co., and to enable them to go on with their business and pay up this indebtedness, N. & Co. placed a person in charge of the books of R. & Son, and agreed to advance further sums for the purchase of grain, and reimburse themselves, and pay the old indebtedness from the sale of such grain. In furtherance of this agreement, the agent of N. & Co. called upon appellees, who were bankers, informed them of the arrangement with R. & Son, requesting that R. & Son might open an account with appellees, and told them that N. & Co. would honor all bills drawn on them by R. & Son in the regular course of business with N. & Co. Drafts were afterwards drawn by R. & Son, and cashed by appellees to large amounts. N. & Co. refused to honor the drafts in suit, because of the insolvency of R. & Co. *Held*, that the parol promise to pay such drafts when made was valid, and that N. & Co. were liable for the same; that the true measure of damages should be

the amount due appellees for money paid to R. & Son on account of the business transactions done in pursuance of such contract.

APPEAL from the Circuit Court of LaSalle county; the Hon. JOSIAH McROBERTS, Judge, presiding. Opinion filed May 2, 1879.

Messrs. BLANCHARD & BLANCHARD, for appellants; that the credit was not given to N. & Co., and therefore the promise, if any, was collateral and within the Statute of Frauds, cited Ruggles v. Gatton, 50 Ill. 412; Eddy v. Roberts, 17 Ill. 505; Patmor v. Haggard, 78 Ill. 607.

In this case the statute may be relied on under the general issue: Tyler v. Merrill, 55 Ill. 52; Meyers v. Schemp, 67 Ill. 469; Durant v. Rogers, 71 Ill. 121.

Messrs. RICHOLSON & SNOW, for appellees; that the question at issue was solely one of fact, and the finding should not be disturbed where there is evidence to support it, cited White v. Clayes, 32 Ill. 325; C. & A. R. R. Co. v. Shannon, 43 Ill. 338; Harbison v. Shook, 41 Ill. 142; First Nat. Bank v. Mansfield, 48 Ill. 494.

A parol promise to pay an existing or non-existing bill, is not within the Statute of Frauds: Nelson v. First Nat. Bank, 48 Ill. 36; Jones v. Council Bluffs Bank, 34 Ill. 313; Mason v. Dousay, 35 Ill. 424; Sturges v. Fourth Nat. Bank, 75 Ill. 595; 2 Greenleaf's Ev. § 104.

PILLSBURY, P. J. Assumpsit upon the common counts for money paid by appellees to E. Richardson & Son, upon draft drawn by them upon appellants, which appellants refused to pay.

On the 23d and 25th days of October, 1875, E. Richardson & Son drew the two following drafts upon appellants:

"$500.00.                    Ottawa, Ill., Oct. 23d, 1875.

"At sight, pay to the order of Exchange Bank five hundred dollars, value received, and charge to account of

"No. 70.                    E. RICHARDSON & SON.

"To MURRAY NELSON & Co., Chicago, Ill."

"$500.00.                    Ottawa, Ill., Oct. 25th, 1875.

"At sight, pay to the order of Exchange Bank five hundred dollars, value received, and charge the same to account of

"No. 71.                              E. RICHARDSON & SON.

"To MURRAY NELSON & Co., Chicago, Ill."

These drafts were passed to the credit of the drawers by appellees, who were the proprietors of the Exchange Bank, and the amount thus credited was drawn out by Richardson & Son to the extent of $680.89, before notice of non-payment of the drafts reached appellees.

Richardson & Son had for a long time been engaged in the buying and shipping grain at Ottawa, Illinois. From the fall of 1874 the appellants had been their commission men at Chicago.

In June, 1875, Richardson & Son became financially involved, and Pickering, of the firm of Murray Nelson & Co., went to Ottawa, and there made a settlement with them, when it was found that they were indebted to appellants in about the sum of $1,250 dollars, for money advanced them with which to purchase grain. At this time, June 22nd, an agreement was made by appellants and Richardson & Son, by which Richardson & Son would continue in the business of buying grain and shipping the same to appellants; and appellants were to sell the same on account of such prior indebtedness and any future advances, and for the purpose of protecting the interest of Nelson & Co., Richardson & Son were to employ one Dorland, who was to have the exclusive charge of the books, and to furnish Nelson & Co. a statement when required by them to do so, and was to receive and disburse all moneys advanced by Nelson & Co. to Richardson & Son.

On the trial George W. Ravens, one of the plaintiffs, testified that after this contract was made, Pickering came into their bank and told him that Richardson & Son desired him to speak with plaintiffs about opening an account with them; that he told Pickering that the Richardsons were hard up, and that they did not care to take hold of their business unless they could safely do so. That Pickering then informed him that Murray Nelson & Co. were going to furnish money to the Richardsons,

and would see them all right, as they were going to have one of their men in the office; as long as he was there it would be all right; that Dorland would draw drafts on Nelson & Co., to be signed by the elder Richardson, and Dorland would check out the amounts in the regular course of business, signing checks E. Richardson & Son, by Dorland, and that if the arrangement was broken up he would telegraph to plaintiffs; and that Murray Nelson & Co. would honor all drafts drawn on them as they came in. The witness further testified that from that time to the time the drafts in question were drawn, they received and cashed drafts drawn by Richardson & Son on Nelson & Co. to the amount of $50,000. That the plaintiffs would not have allowed Richardson & Son to check against such drafts had it not been for the promise of Pickering to honor them when presented.

Pickering as a witness denies he made any arrangement with the plaintiffs as testified to by Ravens; that while they were to furnish money and did pay the drafts presented to them, yet it was done in the usual course of business, and not by agreement with plaintiffs. He says, however, these two drafts would have been paid had not Richardson & Son been closed out by the sheriff levying executions upon the grain then on hand.

These two witnesses were the only ones who testified upon this disputed question of fact.

While it is true that the burden of proof was upon the plaintiffs, upon this proposition we cannot say as a matter of law that the court trying the case in place of the jury was not justified in finding the issue upon this point in favor of the plaintiffs. The court acting as a jury, was peculiarly the judge of the credibility of the witnesses, and many circumstances may occur upon a trial that will give greater weight to one witness than another, that cannot be reproduced upon paper: such as the appearance of the witness upon the stand, his apparent candor and fairness, the degree of intelligence and recollection manifested by him in detailing the facts surrounding a given transaction, and many others that will convince the mind of the court or jury that he is entitled to the greater credit, and of which an Appellate Court is less qualified to judge for want of

equal opportunities of seeing the witnesses and observing all the circumstances surrounding them upon the witness stand. We therefore feel bound to hold that the finding of the court is sustained, that such contract was made as testified to by Ravens.

A parol promise to pay a non-existing bill was held valid by our Supreme Court in Murray Nelson v. The First National Bank of Chicago, 48 Ill. 36, a case like the one at bar in all material respects, so far as the facts are concerned, and that such promise is not within the Statute of Frauds. The same doctrine was held in Sturges v. Fourth National Bank of Chicago, 75 Ill. 595, and would seem to be decisive of the case here, as it holds that the evidence is admissible under the common counts.

The plaintiffs are then entitled to recover, but we think the court should have deducted from the amount of the judgment the sum of $319.25, that being the sum standing to the credit of Richardson & Son at the time the drafts were returned not paid, and which was on the 11th of November, applied by appellees in the payment of a debt due from Richardson & Son prior to the agreement in June.

We think the true measure of damages in this case should be the amount due them for money paid to Richardson & Son on account of the business transactions done in pursuance of such contract.

The $47.55, amount of insurance due upon corn shipped to appellants under such contract should be allowed, making the amount properly due plaintiffs on the 25th day of October, the sum of $680.89, for which the plaintiffs should have judgment, with interest from the 25th day of October, 1875.

For the reason that the judgment is for too great a sum, it must be reversed, and the cause remanded; and if the appellees will remit in the court below all above the amount indicated, the court below will enter judgment for such sum without further trial.

Reversed and remanded.