# FRED. MYERS

## v.

# THE UNION NATIONAL BANK.

*Banks—Checks—Acceptance—Telegram—Appropriation by Bank of a Deposit to Pay Indebtedness to Itself—Notice.*

1.   A bank is not bound to accept by telegram the checks or drafts of its depositors, although in possession of funds.   Its duty is to pay or accept only upon presentation.

2.   A telegram by a bank to the holder of checks of a depositor stating that "Drafts named are good now," is not an acceptance.

3.   A bank may appropriate the funds of a depositor to pay an indebtedness to itself, after receiving notice by telegram that the holder of checks of such depositor has sent a messenger to present them.

[Opinion filed September 18, 1888.]

APPEAL from the Superior Court of Cook County; the Hon. ELLIOTT ANTHONY, Judge, presiding.

Assumpsit by appellant against appellee on three checks drawn in September, 1883, by J. R. Snyder, then a banker at Chenoa, Illinois.  They were as follows:  September 10, 1883, $1,000; September 17, 1883, $1,200; and September 17, 1883, $1,600.

The three checks were exactly alike, except as to dates and amounts.  The first was as follows:

" $1,000.

(Duplicate unpaid.)
" Bank of Chenoa, }
J. R. Snyder, Banker. }
" Chenoa, Ill., Sep. 10, 1883.

" Pay to the order of Fred Myers, Esq., one thousand and no 100ths dollars.
To Union National Bank, Chicago, Ill.
" J. R. Snyder, per Lester."

On September 28, 1883, the three checks were placed by appellant in the hands of his agents, Haynes, Gordon & Co., for collection.  On the morning of the 29th of September, 1883, they telegraphed appellee as follows:

" 9 a. m., Chenoa, Ill., 9–29, 1883.
" To Union National Bank, Chicago.
" Will drafts for thirty-eight hundred dollars, made by J. R. Snyder on you, be paid if presented Monday ?
" Haynes, Gordon & Co."

To which on the same day appellee replied:
" 10:50 a. m., 9–29, 1883, Chicago, 29.
" To Haynes, Gordon & Co., Chenoa, Ill.
" Drafts named are good now.
" J. P. Odell, Cashier."

To which appellant replied:
" 11:29 a. m., Chenoa, Sept. 29, 1883.
" To J. P. Odell, Cash. Union National Bank, Chicago.
" We have sent a man with drafts.  Will be there before, three o'clock.
" Haynes, Gordon & Co."

In the meantime, i. e., between the second and third dispatches, appellee had telegraphed to Snyder inquiring if he

was in trouble, and he had replied that he was in trouble.

September 22, 1883, John R. Snyder gave his note to appellee for $5,000, payable on demand at its bank. The note was given for money then loaned by appellee to John R. Snyder. The money so loaned was placed by appellee to the credit of John R. Snyder on its books.

On the opening of appellee's bank on the morning of the 29th of September, 1883, there was to John R. Snyder's credit in appellee's bank $5,935.17. During the day other drafts, to the amount of $952.63, drawn by John R. Snyder, were paid by appellee. After the receipt of the last above telegram from appellant, appellee made demand for the payment of its $5,000 note at its office (Snyder was not present), and it not being paid, charged it up to Snyder, which, with the $952.68, exceeded Snyder's balance $23.29.

September 29, 1883, Haynes, Gordon & Co. sent one E. J. Davis to Chicago with the checks to collect them. He arrived at appellee's bank somewhere between two and three o'clock, and made demand for the payment of the checks, which was refused by appellee. This demand was after appellee had charged up the $5,000 note to Snyder's account.

Trial by the court without a jury. Finding and judgment for the defendant. Exception and appeal by plaintiff. .

Messrs. KERRICK, LUCAS & SPENCER, for appellant.

"It is the settled law, and has been twice decided by this court, that a parol promise to accept an existing bill is valid." Nelson v. First Nat. Bank, 48 Ill. 40; Sturges v. First Nat. Bank, 75 Ill. 595; Mason v. Dousay, 35 Ill. 424; Edwards on Notes and Bills (3d) Sec. 567; Daniel on Neg. Inst. (3d) Sec. 496.

"According to the law merchant, an acceptance may be, (1) expressed in words; (2) implied from the conduct of the drawer; (3) it may be verbal or written; (4) it may be in writing on the bill itself or on a separate paper." Daniel's Neg. Inst. (3d) Sec. 496.

Acceptance by telegraph is sufficient. Central Savings Bank v. Richards, 109 Mass. 414; Coffman v. Campbell, 87 Ill. 98; Whilden v. Merchants, etc., 64 Ala. 1.

Each of the following has been held to constitute an express acceptance. "Accepted," "seen," "honored," "presented," "I will pay the bill," or writing the day and month when presented. Phillip v. Frost, 19 Me. 77; Dufour v. Oxenden, 1 Moody and R. 90; Leslie v. Hastings, 1 Moody and M. 119; Barnett v. Smith, 10 Foster, 256; Spear v. Pratt, 2 Hill, 582; Anonymous, Comb. 401; Story on Bills, Sec. 243; 1 Par. N. and B. 282; Ward v. Allen, 2 Mtc. 53; Leach v. Buchanan, 4 Esq. 226; 1 Par. N. and B. 243; Cunningham on Bills, 26.

In the following cases "good" has been held to constitute a certification. Barnett v. Smith, 10 Foster, 262; Wellett v. Phenix Bank, 2 Duer, 121; Guard Bank v. Bank of Penn., 39 Pa. St. 92; Farmers and Mechanics Bank v. Butchers and Drovers Bank, 4 Duer, 219; Merchants Bank v. State Bank, 10 Wall. 605; Bickford v. First Nat. Bank, 42 Ill. 240; Espey v. Bank of Cincinnati, 18 Wall. 617; Meads v. Merchants Bank, 25 N. Y. 146; Robson v. Bennett, 2 Taunton, 322.

Therefore, assuming that when the cashier of a bank pronounces it "good" it is a certification, what is the effect of such certification? By the certification of checks "the bank becomes the principal debtor. When the holder presents the check to the bank, the latter can only respond to the demand for payment by making payment." Daniel on Neg. Inst. Sec. 1603; Edwards on Bills and Notes, Secs. 565 and 566.

"Any language, whether verbal or written, employed by an officer of a banking institution, whose duty it is to know the financial standing and credit of its customers, representing that a check drawn upon it is good, and will be paid, estops the bank from thereafter denying it." Pope v. Bank of Albion, 59 Barb. 237.

See also, Barnett v. Smith, 10 Foster, 260; Farmers and Mechanics Bank v. Butchers and Drovers Bank, 4 Duer, 219; Morse on Banks and B. (2d Ed.), 103; Daniel on Neg. Inst. (3d Ed.), Secs. 1601, 1602 and 1603; Bickford v. First Nat. Bank, 42 Ill. 241.

It seems to us, therefore, that for the cashier of a bank to pronounce a check drawn on the bank as "good," is for the bank to enter into an unconditional engagement to pay the

check, or at least, if the drawer, at the time, has sufficient funds in the bank to pay such check, to hold such funds for the purpose of paying the check, when payment may be demanded. Did adding "now" to the statement that the checks were "good" have the effect to limit or change the acceptance? If the checks were "good now," when and by whose act did they cease to be "good?" If at all, evidently only by the act of appellee, when it charged up to Snyder the amount of his demand note. May a bank, after it has knowledge of outstanding checks drawn on it, against funds of the drawer, in its hands, and which it has previously declared "good now," use the funds in its hands that made the check "good now" for the purpose of paying a subsequently maturing debt of the drawer, in its hands? It would seem to us that it could not do so.

If a check is, by the bank on which it is drawn, made "good now," it will continue "good" until some act of the holder— as receiving payment, or permitting the statutes of limitation to run—renders it not good.

The language "good now" is the language of appellee, and of course is to be most strongly construed against it.

If a party designs to make his acceptance conditional, it is his duty "to express clearly the condition of his acceptance, if he designs to make it conditional, and the burden is upon him to show it and not upon the holder of the bill." Chitty on Bills, 303.

Mr. MELVILLE W. FULLER, for appellee.

The mere drawing of the checks in question did not operate as an appropriation of that amount of money at the date of the checks and prior to their presentation, as between Myers and the Union National Bank or any other check-holder whose checks were presented before these checks were.

Bank checks are not bills of exchange, although they have many of the properties of such commercial paper; and many of the rules of the law merchant are alike applicable to both. Some points of difference are that a check is drawn on a bank or banker. No days of grace are allowed. The drawer is not

discharged by the *laches* of the holder in presentment for payment unless he can show that he has sustained some injury by the default. It is not necessary that the drawer of a bill should have funds in the hands of the drawee, while a check in such case would be a fraud.

In Merchants Nat. Bk. v. Ritzinger, 118 Ill. 484, the essential characteristic of a check is held to be that it shall be instantly payable on demand.

And a check "is not due until payment is demanded, and the statute of limitations runs only from that time." Merch. Bank v. State Bank, 10 Wall. 647.

It is indisputable that a check is never presentable for acceptance, but only for payment; that is, the holder has no right to demand anything save a cash payment; he has no claim upon the bank to accept. Morse v. Mass. Nat. Bank, 1 Holmes, C. C. 209; 2 Dan. Neg. Inst. (3d Ed.), Sec. 1601; Morse on Banks (2d Ed.), 259.

"If the bank has funds to pay the check, or all checks presented, it must pay them, although the bank or its paying officer may know that other checks have been drawn which, when presented, will go beyond the funds." 2 Parsons on Notes and Bills, p. 78.

"The rights of the holder of the check and the bank will be fixed from the time the check is presented for payment." Fourth N. Bk. v. City N. Bk., 68 Ill. 399.

"The rights of the parties became fixed upon presentation." Munn v. Burch, 25 Ill. 35.

"The mere priority in the drawing of a check upon a bank is not sufficient to give to the holder of such check a legal right to preference in payment out of the funds of the drawer over the holders of checks subsequently drawn. And where different checks are presented to the bank at the same time for sums which, in the aggregate, exceed the amount of the funds of the drawer, the officers of the bank are not bound to settle the conflicting claims of the holders of the different checks to priority of payment." Dykes v. Leather Man. Bank, 11 Paige, 612.

The inquiry here is, after all, not as to what would be, in the

abstract, a sufficient demand to hold an indorser, but whether this bank, holding Snyder's note, payable to itself on demand at his office, had the right to demand and pay itself without first hunting up Snyder and requesting him, personally, to pay, he having telegraphed that he would have to close.

In Home National Bank v. Newton, 8 Ill. App. 563, a very well considered case, this court held it to be "a settled principle that where a depositor in a bank is indebted to the bank by bill, note, or other independent indebtedness, the bank has the right to apply so much of the funds of the depositor as may be necessary to satisfy the bank," and that "the same rule obtains where a depositor makes his paper to third persons, payable at the bank. As it is the duty of the bank to pay its customers' checks, when in funds, so at least it has authority, if it is not under actual obligation to pay his notes and acceptances made payable at the bank. It is a presumption of law that if a customer does so make payable or negotiable at a bank, any of his paper, it is his intent to have the same discharged from his deposit." This latter application of the rule, when confined to the regular customers of the bank, is sustained by the text books and the weight of authority. 1 Daniel's Neg. Inst. (3d Ed.), Secs. 326a and 326b, and cases cited in notes. Morse on Banking (2d Ed.), p. 37.

But whether a bank at which paper is payable may apply the maker's funds (he being a regular customer) to pay it or must do so, need not to be discussed, as it is well settled that when a bank is itself the holder of a bill or note there payable, it may apply to the funds of the principal payor to pay it. 1 Danl. Neg. Inst. (3d Ed.), Sec. 326b; Dawson v. Real Est. Bank, 5 Pike, 284; McDowell v. Bank of Wilmington, 1 Harr. 369. Where the bill or note is made payable at a particular bank, and the bank itself is the holder, all the demand that is necessary is for the bank to examine the account of the maker, and if he has any balance, "the bank would have a right to apply it to the payment of the note." Bank v. Smith, 11 Wheaton, 171, on p. 178; 6 Curtis' Dec. 550; Lord v. Thornton, 3 Leigh, 695; State B. v. Armstrong, 3 Dev. 519; Ætna N. B. v. Fourth N. B., 46 N. Y. 88; Kymer v. Laurie, 18 L. J. Q. B. 218.

And undoubtedly where the bank loans money to its depositor upon his note, payable to the bank on demand at the banking office, such demand note so payable is equivalent to a check, except that the maker is not discharged for failure to present.    Indig v. Nat. City Bk., 80 N. Y. 106; Ætna N. B. v. Fourth N. B., 46 N. Y. 88; Thatcher v. Bank, 5 Sand. 130.

By usage, and independently of usage, a bank can debit its customer in account with the amount of his overdue note which it has discounted.    This must result from the relation of debtor and creditor.    Bk. v. Hughes, 17 Wendell, 94; Marsh v. Bank, 34 Barb. 298; Ex parte Howard Nat. Bk., 2 Lowell, 487.

GARNETT, J.    The first telegram from Haynes, Gordon & Co. to appellee was either a mere application for information or a request for acceptance.    If the former, appellee is not estopped to deny its liability, because the reply stated the truth and appellant was not injured thereby; neither did he purchase the drafts (or checks) on the faith of such reply.    Treating the telegram, however, as a request to accept payable on the following Monday, the reply of the bank can not be regarded as a compliance with the request.    There is a distinct implication in the words " Drafts named are good now," that the bank would not undertake to answer for the state of Snyder's account beyond the moment when its telegram was sent. Myers did not regard it as an acceptance payab'e Monday, else he would not have demanded payment the Saturday previous. But his counsel argues that the reply of the bank was equivalent to writing "good" or "accepted" on the face of the paper.    If so, the bank at once became the principal debtor, and was bound to pay whenever the paper was presented. Appellant did not consider that he had secured any such undertaking from appellee, but regarded it purely as a race of diligence.    An acceptance is a contract, and does not differ from other contracts in the essential requirement of a meeting of minds.    A bank is not bound to accept by telegram the checks or drafts of its depositors, although in possession of funds to pay.    Its duty in such cases is to accept a draft, or

pay a check, only on presentment. One relying on a telegram as an acceptance, should see to it that the language used will, at least, fairly bear the meaning. Rees et al. v. Warwick, 3 Eng. C. L. 467.

The case at bar is easily distinguishable from Coffman v. Campbell, 87 Ill. 98. There the defendants plainly said they would pay the draft, but added a phrase which did not explain itself. Having promised to pay in positive terms, the court held that if they desired to add a condition it should have fully expressed it. But here the intention to accept is not expressed; on the contrary, as we have shown, appellee's telegram plainly implied that it would not agree to hold Snyder's balance for *any time* to meet the paper held by Myers.

Appellant contends that the making and delivery of the checks operated as a transfer to him of so much of Snyder's deposit as was required to pay them, and that after receipt of the telegrams the bank could not pay to itself a debt due from Snyder, and thereby exhaust the fund which had been appropriated to the payment of the checks. For that doctrine reliance is placed on several cases decided by the Supreme Court of this State, but the only one which appears to have serious importance is Bank of America v. Indiana Banking Co., 114 Ill. 483. That was a contest between a check-holder and an attachment creditor. A garnishee summons was served on the bank after the check was delivered, and before the bank had notice of the check. After service of the garnishee process the bank paid the check, and the court held the payment rightful. But it is well settled that an assignment of a chose in action protects the assignee against subsequent garnishment of the debtor by the creditor of the assignor, if the defense is properly presented. Drake on Attachment, Sec. 527.

In the case at bar the dispute is between two creditors, one of whom is a check-holder and the other the holder of a note payable at the same bank; it is equivalent to a contest between two check-holders. The sound doctrine in such cases is set forth in Morse on Banks and Banking, p. 266, as follows:

"The rule with checks is, 'first come first served.' If payment is demanded at noon upon a check which the depositor's unincumbered balance at that hour is sufficient to pay in full, the obligation of the bank to pay it in full is at once mature and perfect. It is no matter how many checks may be presented at later hours, or how much the sum of all the checks presented in the course of the day may exceed the amount of the customer's balance. This is no concern of the bank, not even if it has been informed that such checks have been drawn and will be presented for payment. Its perfectly simple duty is to pay in full each check presented, at the time of presentment, so long as the unincumbered credit of the depositor suffices to enable it to make such payments in full." This rule meets our approval. Any other must lead to endless confusion.

Considering the merits of the respective claims we shall have no difficulty in holding the equity of the bank to be at least equal to that of Myers. There was no privity between them. Myers received his checks several days before Snyder made his deposit of $5,000 in the bank, hence he could not have relied on that deposit at the time he paid Snyder for the checks. In a similar case, First National Bank v. Pettit et al., 41 Ill. 492, the court said: "We do not see * * * upon what principle it [the bank] should be required first to pay a debt due from Allen [the depositor] to persons with whom it has had no transactions and who, if losers, are so by no fault of the bank. The debt due from Allen to it is as meritorious as that due the appellees," the holders of the checks. The judgment is affirmed.

*Judgment affirmed.*