Edward Hines Lumber Co. v. Anderson.

**Edward Hines Lumber Company, Defendant in Error, v. Albin Anderson et al., Plaintiffs in Error.**

### · Gen. No. 13,850.

NEGOTIABLE INSTRUMENTS—*when verbal acceptance of bill of exchange not within Statute of Frauds.* A verbal acceptance of a bill of exchange is valid and not within the Statute of Frauds even though the acceptor had no funds in his possession belonging to the drawer.

Assumpsit. Error to the Municipal Court of Chicago; the Hon. WILLIAM W. MAXWELL, Judge, presiding. Heard in this court at the October term, 1907. Affirmed. Opinion filed June 11, 1908.

CASTLE, WILLIAMS, LONG & CASTLE, for plaintiff in error.

GILBERT & GILBERT, for defendant in error; A. N. WATERMAN, of counsel.

MR. JUSTICE BROWN delivered the opinion of the court.

This is a writ of error sued out to reverse a judg-

ment of the Municipal Court of Chicago for $193.29 in favor of the Edward Hines Lumber Company against Albin Anderson and Paul Schulte jointly. Schulte, who obtained a stay order and *supersedeas,* is seeking a reversal of the judgment. It was rendered against him as the acceptor of the following draft or inland bill of exchange:

"PAUL SCHULTE, ESQ., City;

DEAR SIR: Please pay to the order of the Edward Hines Lumber Co. the sum of $193.29, being in full for all lumber delivered to your building, 1014 Wesley Avenue, and charge same to my account.

Yours truly,

Chicago, June 22, 1906. ALBIN ANDERSON."

It is not claimed that Schulte accepted this instrument in writing, but it is alleged that he promised Anderson before it was drawn that he would pay it if drawn and delivered to the representative of the Edward Hines Lumber Company; and also that after it was drawn and in the possession and ownership of the Edward Hines Lumber Company, he promised the representative of that company he would pay it. These promises and each of them, it is claimed, made him an acceptor of the draft.

Mr. Schulte denied that he had ever made these promises, but there was testimony before the trial judge (the case was tried without a jury) that he did, and on that point we must take the decision of the court below as final. There certainly is no clear preponderance of the evidence against it.

The testimony of Mr. Schulte was that at the time of the alleged promises he did not owe Anderson anything. Mr. Anderson was called by the plaintiff as a witness in rebuttal, and asked whether Schulte owed him anything, but the question was objected to and ruled out. We assume therefore, in passing on this case, that Schulte was not indebted to Anderson. There is no evidence, however, that the Lumber Company knew this, and it is undisputed that Anderson

owed the Hines Lumber Company the amount mentioned in the order, and practically at least undisputed that the indebtedness was for lumber bought by Anderson from the Hines Lumber Company and put by him into Schulte's building.

On transactions arising after July 1, 1907, when the taking effect in Illinois of the Negotiable Instruments Act happily assimilated our law of mercantile paper with that of the other great commercial states, no such question as is involved here can arise. That act by its 131st section provides that all acceptances must be in writing and signed by the drawee. But by the law of Illinois applicable to negotiable paper made prior to that date, verbal acceptances were as valid as written ones.

A forcible and able argument is made by counsel for the plaintiff in error that this statement is not true without qualification. He claims that a distinction can and should be drawn between the cases in which this doctrine has been laid down and the present, in this: that in those cases it did not appear, as it does in this, that the acceptor had no funds of the drawer in his hands at the time of the acceptance.

A written accommodation acceptance would be valid and enforceable, it is conceded, but a verbal accommodation acceptance has never been declared so, it is said, although it is also conceded that in Illinois a verbal acceptance is valid when it is for value; that is, when the drawee has funds of the drawer in his hands, of which the draft works an assignment, or when the drawee parts with something valuable on the faith of it.

In other cases, however, it is insisted that a verbal acceptance is a plain promise to pay the debt of another, and within the Statute of Frauds. Several cases in other jurisdictions are cited to us, in which the opinions bear out this contention. Thus, the Supreme Court of Iowa, in *In re* Walton v. Mandeville et al., 56 Iowa 597, lends it countenance; but the force

of the opinion is weakened for us by the fact that in support of its doctrine it cites cases from states where no verbal acceptance of negotiable paper is valid, and declares that "An acceptor by verbal acceptance does not become a party to the paper, certainly not in any such sense as he would by written acceptance." We understand the doctrine in Illinois before the Negotiable Instrument Act to have been the reverse of this. It is not necessary to cite the other cases in Illinois, although there are several, that support the doctrine of Nelson v. First National Bank of Chicago, 48 Ill. 36. In that case the law of Illinois was laid down by Mr. Justice Lawrence as to oral acceptances of existent and non-existent bills, so that it cannot be mistaken. He declares that "a parol promise to accept or pay a non-existing bill is no more within our Statute of Frauds than would be a similar promise to pay an existing bill, and clearly neither is within the statute, for such a promise    *    *    *    is an original promise to the purchaser, not merely a promise for the debt of another. Such a promise gains no additional validity or obligation from being in writing. It is merely susceptible of clearer proof."

This language lends no countenance to the distinction here insisted on, but rather would imply that the statement of Daniel on Negotiable Instruments, sec. 567 (5th edition), that such a distinction is immaterial, is correct. Even if a *dictum* so far as the precise point here raised goes, it is a judicial *dictum* which we must respect.

Daniel, we think, in the section referred to states the correct doctrine for us to apply, when, quoting from Throop on Verbal Agreements, he says: "Contracts, the construction, validity and evidence of which depend upon so much of the law merchant as the common law recognizes, or the provisions of some other statute, are exceptions to the operation of    *    *    *    the Statute of Frauds;" and when he says, referring to Chitty: "A standard author considers a bill of

exchange as a preferable form of security, on the ground that the Statute of Frauds does not apply to it, and such is the general understanding, as we believe, of the commercial world," and adds that the numerous cases which have held a verbal acceptance or promise to accept as binding, are generally based upon the open assertion or tacit acknowledgement of this theory.

We must hold that the Statute of Frauds does not apply to the acceptance by the plaintiff in error of the order in question, even though it be assumed that he had no funds in his hands and did not alter his position on the faith of the bill. But we are far from certain that we ought to assume the last proposition. Mr. Anderson had built a house for Mr. Schulte. He had bought lumber from the Hines Lumber Company and placed it in that house. The statute gives the materialman a lien and provides means and methods by which it may be enforced under certain conditions. To take a negotiable instrument in payment for the material, *prima facie* releases the lien. It is true we have no proof in the record that the necessary conditions had been fulfilled under which alone the Lumber Company could enforce its lien, but we are not satisfied that if the case turned on that question, we should not be obliged to hold that *prima facie* the plaintiff had shown a consideration for the acceptance in its change of relation to the property on which the lumber was used.

As to the joint judgment, we think it was justified under section 2 of the Act of June 4, 1895, concerning negotiable instruments.

The judgment of the Municipal Court is affirmed.

*Affirmed.*