## James S. Brown *v.* W. J. Hitchcock.

### *Contract. Evidence. Pleading.*

The plaintiff delivered to the defendant a quantity of palmleaf, for which the defendant gave a written receipt and agreement to get it worked into hats or return it when called for, and specified the price at which it was to be accounted for, if used.　*Held,*

1st. That the contract was one of bailment merely, and not of sale, the leaf not ·having been used.

2d. That parol proof was inadmissible to show that, at the time of the execution of the writing, it was agreed that the palmleaf should remain at the plaintiff's risk; but that testimony was admissible in reference to the condition of the leaf when left, the usage and custom in packing leaf for market, and the necessity and custom of taking it from the sacks and exposing it to the air, and the care exercised by the defendant in that respect.

3d. That the defendant was bound to exercise ordinary care in looking to and preserving it.

The declaration in this case sustained on motion in arrest, though it would have been defective on demurrer, and there were material variances between it and the proof, on which account, however, no objection was made.

ASSUMPSIT, the declaration being as follows, with the addition of the common counts.

"In a plea of the case, for that the defendant, at said Halifax, on the 5th day of January, A. D. 1850, in consideration that the plaintiff would furnish him, the defendant, palmleaf, to wit, seven hundred and fifty-six pounds, at said Halifax, he, the defendant, undertook and promised the plaintiff to get 'the said palmleaf worked into hats as soon as he, the defendant, should have worked up what leaf he then had on hand; and the plaintiff avers that he did deliver said palmleaf to the defendant, at said Halifax, and that the defendant long since, to wit, on the 1st day of March, A. D. 1850, worked up what leaf he had on hand at the time of receiving the leaf aforesaid of the plaintiff; that the defendant has not worked said seven hundred and fifty-six · pounds of palmleaf into hats, or any part thereof, but wholly neglects and refuses so to do."

"And also, in a further plea of the case, for that the defendant, on said 5th day of January, A. D. 1850, at said Halifax, in consideration that the plaintiff then and there did deliver to him, the defendant, a large quantity of palmleaf, to wit, seven hundred and fifty-six pounds, he, the defendant, then and there received said palmleaf, and undertook and promised to take proper care of said leaf, and get the same worked into hats when he, the defendant, should get what leaf he then had on hand worked up, or return said seven hundred and fifty-six pounds of palmleaf to the plaintiff, when he, the plaintiff, should call for the same. And the plaintiff, in fact, says that the defendant, disregarding his said promise and undertaking, did not take proper care of said palmleaf, but, solely

through the defendant's want of proper care, said leaf rotted and spoiled and became wholly valueless, to wit, at said Halifax, on the first day of May, A. D. 1850."

Plea, the general issue; trial by jury, September Term, 1855,— UNDERWOOD, J., presiding.

The plaintiff read in evidence a writing signed by the defendant, executed January 5th, 1850, which was as follows:

" Received of J. S. Brown, one hundred pounds No. 4 leaf,— " three hundred and thirty-eight pounds No. 3 do.,—three hundred " and eighteen pounds No. 2 do., which I agree to get worked into " hats as soon as I work up what leaf I have on hand, or to return " it to Mr. Brown when called for.

" The above to be accounted for, No. 2 leaf at 10 cents, No. 3 " leaf at 14 cents, and No. 4 leaf at 1 s. per pound, if used."

The testimony on the part of the plaintiff tended to show that the plaintiff delivered to the defendant the leaf specified in the contract at Halifax; that in February, 1851, the plaintiff called on the defendant for a settlement in regard to the leaf,—and that the leaf had then nearly spoiled by heating and moulding, and that the same was occasioned by reason of its not having been taken out of the sacks after it was left, and being exposed to the air.

Here arose a question as to the construction to be given to the contract, the plaintiff claiming it imported a *sale*, and vested the title in the defendant, and that the leaf was at the defendant's risk. The defendant contended that it imported a bailment only, with a right to purchase. The court decided the transaction a bailment, to which the plaintiff excepted.

The defendant gave evidence tending to show that the leaf, when left, was put in the defendant's store-chamber, in the sacks, where the defendant had usually kept his leaf, and piled up in a part of the chamber stated by the plaintiff to be suitable, the plaintiff and defendant being there together; and that the leaf there remained in the same condition, without being disturbed or moved, till the plaintiff called in February, 1851. The defendant's evidence further tended to show that since 1844, he had stored leaf in the same chamber, that he had always so stored it in the original sacks, and that he did not open them except as his customers wanted it; that he never had any injure there, although some had been kept in the

sack a year and a half; that he kept one sack in the same chamber with the leaf in controversy, from October, 1849, to April, 1852, unopened, without injury; and the defendant testified that he took the same care of the leaf in controversy, as he did of his own, as to airing; and that he never took his own out of the sacks to air. The defendant called several witnesses who had been in the habit of purchasing palmleaf, whose testimony tended to show that they were in a habit of purchasing in sacks, and that it kept without injury in the sacks, and without being opened and exposed to the air; and he also gave evidence tending to show that the leaf, when left, was damp and in an unmerchantable condition, and that the injury arose from its being put up and left in such condition, and not from want of care on his part.

The defendant offered to prove that, at the time the leaf in controversy was left with him, he told the plaintiff, just before executing the receipt, that the palmleaf must remain at the plaintiff's risk, if he left it, and that the plaintiff assented to it; to this testimony the plaintiff objected, and the court excluded it, to which the defendant excepted.

The plaintiff offered evidence to prove the condition in which leaf is usually put up for the trade; and the testimony tended to show that it is put up in sacks in a damp state, that is, so damp as to be in the best condition for braiding; and that in this condition it is usual to sell and buy, and that the leaf in controversy was in this condition when left. The plaintiff also offered testimony to show the necessity and custom of taking leaf from the sack and airing it, if kept any considerable length of time; that the common rule was to sack the leaf when sufficiently damp to be in the best condition for braiding, and that, in that condition, it was the uniform practice for manufacturers to sell, and for purchasers to buy; that leaf thus prepared and sacked ready for market and for braiding, was likely to injure by heating, if suffered to remain in the sack unexposed to the air for any considerable length of time, especially in warm weather; to all which the defendant objected, but the court admitted the testimony, to which the defendant excepted.

The court charged the jury, among other things not excepted to, that the measure of care the defendant was bound to bestow on the leaf while in his possession, until called for, or until the defendant

should notify the plaintiff of his election not to purchase, was *ordi-nary care ;* and that if the jury found that the defendant was want-ing in ordinary care and prudence in looking to and preserving the leaf from injury by heating, and the injury arose from such want of care, the defendant would be liable, provided, however, they should further find that the leaf, when delivered, was sacked in proper condition to be marketed; that it was incumbent on the plaintiff, in order to recover, to show that he delivered the leaf in a proper marketable condition, as to dryness or dampness, and in order to this, the jury must be satisfied that the leaf, when de-livered, was in a condition suitable for the object for which it was designed, and in which it was usual for manufacturers to sell and purchasers to buy, and if the jury found that it was not in that condition when delivered, but that it was put up and delivered too damp, either by design or accident, and this contributed to the heating and injury, the plaintiff could not recover.

To this charge the defendant excepted. The jury returned a verdict for the plaintiff; after which the defendant moved in arrest of judgment, that the declaration was insufficient, &c. This mo-tion was overruled, to which the defendant also excepted.

*C. N. Davenport* and *D. & G. B. Kellogg* for the defendant.

*Butler & Knowlton* and *H. E. Stoughton* for the plaintiff.

The opinion of the court was delivered by

ISHAM, J.   The declaration in this case contains two special counts in assumpsit, and also the general counts. The contract was read in evidence, on the trial of the case, without objection. It appears from the case, that the defendant received from the plaintiff seven hundred and fifty-six pounds of palmleaf, under an agreement to manufacture it into hats as soon as he had worked up the material he then had on hand, or to return it to the plaintiff when called for. If the leaf was manufactured, it was to be ac-counted for at different prices. The leaf was never used for that purpose, and it appears that it became much injured while in the defendant's hands, by heat and mildew. The plaintiff insisted that the contract was one of sale. The court held that it was one of bailment merely, and to that ruling, exceptions were taken. We

think the decision of the court was correct on that subject. As the leaf was never worked into hats, the question does not arise in the case to whom the hats would belong if they had been manufactured. It is obvious that, so long as the leaf was unmanufactured, it remained the plaintiff's property, as the identical leaf was to be returned to him on demand. That is the express provision of the contract. While the leaf remained in that state, the duties and obligations arising out of the relation of bailor and bailee existed between them. That relation necessarily results from the fact that a property in the leaf, while in that state, remained in the plaintiff.

The testimony offered by the defendant to prove that an agreement was made, at the time the leaf was left with him, that it was to remain at the plaintiff's risk, was properly rejected by the court. The written contract is certain and specific in its provisions; there is no ambiguity in relation to that matter that requires explanation. It is as incompetent for the defendant to change or alter the legal effect of that contract, as it is to change its language. On that particular bailment, the law imposed specific duties and liabilities. To change those duties, or to create different liabilities, by the introduction of that testimony, would add provisions to it not expressed in the contract. The general principle, that parol contemporaneous evidence cannot be received to contradict or vary the terms of a written agreement, will equally exclude all such evidence to vary its legal effect.

We perceive no objection to the admission of the testimony which was offered for the consideration of the jury by the plaintiff, as well as that offered by the defendant, in relation to the condition of the leaf when left, and the care subsequently exercised over it by the defendant; nor to the testimony in relation to the usage and custom in packing leaf for market, as also the necessity and custom of taking the leaf from the sacks and exposing it to air to prevent its becoming injured and valueless. In relation to all that testimony it may be observed, that it was not offered to control or in any way to affect the contract between the parties. Its object was simply to ascertain the character and degree of care which the defendant should have exercised, and that which he did exert over the property while it was in his possession. The question in issue was,

whether the defendant had been guilty of negligence in taking care of that property while it was in his charge. On that question, the evidence was proper for the consideration of the jury, that the leaf was placed in a chamber selected by the plaintiff, and which he thought was suitable, and that leaf had been kept there in that manner without injury. It was proper also to show that the leaf was damp and in an unmerchantable condition when it was left, and that the injury arose from that cause, and not from the want of care on the part of the defendant. On the other hand, it was proper for the plaintiff to show that it was usual and customary to put leaf in sacks in a damp state for market, that it was usually bought and sold in that way, and also the necessity and custom of taking the leaf from the sacks and exposing it to the air. The defendant, being a manufacturer of leaf into hats, and having received this leaf for that purpose, is supposed to know what is necessary, and the kind of care required to preserve it. On that subject, contradictory as the testimony may be, it became a question for the jury to determine, under proper instructions from the court, whether the defendant exercised proper prudence and care in taking charge of that property, while it was in his possession.

The court properly charged the jury that the defendant was bound to exercise ordinary care in preserving·the property from injury; not that care which the defendant exercised over his own property, but that care which men of ordinary prudence and judgment exercise over property of their own. Taking the whole contract together, it is obvious that the bailment was one of mutual benefit. The plaintiff was to derive benefit from the disposition and manufacture of the leaf into hats, and the defendant in manufacturing them. It was ordinary care, therefore, that the defendant was bound to exercise over that property. The jury have found, by their verdict, that the defendant did not exercise that degree of care, and that the injury to the leaf was occasioned by it. We see no error in the decision of the court on the trial of the case; and the verdict of the jury is conclusive as to the facts. The exceptions allowed to both parties are overruled, and the judgment of the county court is affirmed.

The declaration, we think, can be sustained on this motion in

arrest. It is very informal, and would be defective on demurrer, and there are also material variances between the proof and the declaration, but no objections have been taken of that character. Every reasonable presumption should be made after verdict to sustain the declaration; 17 Vt. 464. The motion in arrest is, therefore, overruled.