## Edward A. Shedd et al. v. Joachim Seefeld et al.

### Gen. No. 12,422.

1. EQUITY—*when objection to jurisdiction of, comes too late.* Where a court of equity is not clearly without power to hear and determine a controversy, objection to its jurisdiction made after the hearing of the cause is too late.

2. EVIDENCE—*when exclusion of, cannot be complained of.* A party who, by objection, has caused evidence of the opposite party to be excluded, cannot complain of the exclusion of like evidence offered by himself.

3. ASSIGNMENT OF ERRORS—*how far essential to review.* A point not included in the assignment of errors cannot be urged on appeal.

4. FINDINGS OF CHANCELLOR—*when will not be disturbed.* Where a cause is heard by the chancellor and the evidence is all or partly oral, it must appear that there is a clear or palpable error before a reversal will be had.

Bill in nature of creditor's bill. Error to the Circuit Court of Cook County; the Hon. THOMAS G. WINDES, Judge, presiding. Heard in this court at the October term, 1905. Affirmed. Opinion filed May 7, 1906.

**Statement by the Court.** The following in quotation marks is taken from the argument of counsel for plaintiffs in error, and is substantially correct:

" May 23, 1901, a bill was filed by F. A. Smith et al., creditors of one John Dreucker, to have a certain warranty deed declared a mortgage. It was in the nature of a creditor's bill.

Shortly before John Dreucker had filed a similar bill alleging the same facts, and the two cases were consolidated.

John Dreucker had been conducting a public warehouse on the premises described in the deed.

After filing the above bills and on June 11, 1901, E. J. Piggott was appointed receiver for said warehouse, and conducted the same until November 21, 1902, when he resigned, and Rawson Waller was appointed in his stead. Waller conducted the business until March 21, 1903, when under an order of court pursuant to a decree entered November 19, 1902, the property was turned over to E. A. Shedd and B. F. Harris, the owners.

Said order of March 21, 1903, provided : ' It is further ordered that the receiver file his account within thirty days, and shall, on March 23, 1903, turn over the possession of said premises and the business thereon to said Shedd and Harris on reasonable request; the same to be subject to the receiver's certificate and all indebtedness, liquidated and unliquidated, incurred by him or them, and said property shall be held by said E. A. Shedd and B. F. Harris, Jr., subject to all existing liens against said receiver and ex-receiver, and subject to claims and liens to be hereafter adjudicated, which shall be paid by said Shedd and Harris when and as established by this court, and said receiver shall make full report to the court, and the court reserves all matters relating to the receivership and administration thereof for further consideration and disposition.'

On March 21, 1903, defendants in error, Joachim Seefeld

and Charles F. Seefeld, by leave of the court filed their intervening petition, making E. J. Piggott, receiver, Rawson Waller, receiver, E. A. Shedd and B. F. Harris defendants thereto, and alleged that on September 20, 1902, defendants in error entered into a contract with E. J. Piggott, receiver, to store 4,000 barrels of apples in cold storage at a specified rate of storage; that in pursuance of said contract, defendants in error shipped 3,693 barrels, or twenty-one carloads, to the said receiver, E. J. Piggott, who was notified by the railroad companies of the arrival of each of said cars in Chicago; that it thereby became the duty of the receiver to place said apples in cold storage within twenty-four hours of the receipt of said notice, and to keep the said apples at a temperature of thirty and thirty-three degrees above zero (Fahrenheit), but the receiver, regardless of his duty, allowed said apples to remain in the railroad yards, before placing them in cold storage, more than twenty-four hours, and that the running time between the points of shipment and to the warehouse is thirty-six hours from Illinois and four days from New York, and petitioners append exhibit 'A' to this petition in which is given the date each car was shipped, and the date that it arrived in Chicago, and the date it was taken into cold storage, which exhibit also shows that all the carloads of apples in question were more than six days en route, and in most instances more than ten days, and from ten to thirty days. That because said apples were allowed to remain more than twenty-four hours in Chicago after the same arrived, 'said apples were damaged by being allowed to go into what is called a second sweat, which blisters the apples so that their market value is reduced, etc.' And that by reason of allowing said apples to blister on railroad track, and because of improper temperature kept at the warehouse, the apples rotted. That said apples were picked from the best orchards and were of the best quality, carefully selected and packed, and would have been worth $3 to $3.50 per barrel. That the natural shrinkage in apples is ten per cent., but the shrinkage in these apples was twenty-five per

cent., or $1.50 per barrel." The petition prays for an accounting and for general relief.

Each of the defendants to the petition answered, and replications were filed to the answers. The issues thus made were heard on the testimony of witnesses given in open court, except the testimony of R. James Duncan, whose deposition was read, he being sick at his home, and on documentary evidence produced in open court. The court, February 18, 1905, rendered a decree in which it finds, in substance, as follows:

J. Seefeld and C. F. Seefeld were commission merchants of Milwaukee, Wisconsin, and September, 1902, entered into a contract with E. J. Piggott, receiver, for the cold storage of four thousand barrels of apples for the season. Twenty-two carloads of apples were shipped from Newton and West Liberty, Illinois, and from Lindenville, New York, consigned to E. J. Piggott, receiver of Dreucker Cold Storage Warehouse, Chicago, Illinois, on each of which. cars was a card twelve by eighteen containing the words, "Perishable and Rush," which cards were furnished by said Piggott to petitioners. Three thousand five hundred and thirteen barrels were thus shipped to said Piggott, and the apples, when shipped, were fit for cold storage. The apples were principally of the Ben Davis and Baldwin varieties, and of a grade varying from choice to fancy. All the apples were fit for cold storage at the time they were placed in the warehouse, except four cars, which four cars contained seven hundred and twenty barrels and were on tracks in the railway yards, in Chicago, seventeen, twenty-two, twenty-seven and twenty-eight days, respectively, between October 7 and November 7, 1902, and were thereby rendered unfit for cold storage.

The liability of the defendants did not begin till the cars were delivered to the warehouse by the railroad companies, and all of said four cars were not received by the receivers until at least seventeen days after they received notice from the railroad companies of their arrival in Chicago.

The proper cold storage temperature is about thirty-two to thirty-three degrees Fahrenheit, and not lower than thirty-one, nor higher than thirty-five, and three thousand five hundred and thirteen barrels had not proper cold storage, as the temperature where they were stored fluctuated between thirty-two and forty-eight degrees. The apples remained in the warehouse till March and April, 1903, when from one third to two-thirds of them were speckled and rotten. If they had received proper cold storage, they would have been in good condition in March and April, and the shrinkage would not have exceeded ten per cent., and the damaged condition of two thousand seven hundred and eighty-nine barrels, with the exception of the natural shrinkage of ten per cent., was due to the defendants' negligence, in not furnishing proper cold storage.

Petitioners are entitled to recover the difference between the amount which they actually received for said apples in their damaged state and what their market value would have been in the latter part of March or early part of April, 1903, had they received proper cold storage.

The amount received for said apples by petitioners was greater than the cash market value of the same in March and April, 1903.

(N. B. We understand the last finding to mean the cash market value of the apples in their damaged condition.)

The court then figures out the net damage to be the sum of $3,888.34, finds that no part of the damage was owing to the negligence of receiver Piggott, but occurred while Rawson Waller was receiver, and that the damage was owing to his negligence, and also finds that there is no money in the hands of the receiver from which to pay said $3,888.34, and decrees a lien on the premises described in the decree, for that amount, etc.

OLIVER & MECARTNEY, for plaintiffs in error.

FRED H. ATWOOD, FRANK B. PEASE, WILLIAM S. CORBIN and CHARLES O. LOUCKS, for defendants in error.

MR. PRESIDING JUSTICE ADAMS delivered the opinion of the court.

The defendants in error will be referred to as petitioners, and the plaintiffs in error as defendants in this opinion. It is contended by counsel for the defendants that the Circuit Court, sitting in equity, had no jurisdiction to entertain the petition, as the cause of action stated in the petition is a tort, sounding in damages, and that the defendants were entitled to a jury trial at law. The defendants made no objection below to the entertainment of the petition, and did not, in any way, question the jurisdiction, nor did they ask for a jury. The hearing was a lengthy one, nineteen witnesses being examined for the petitioners and eighteen for the defendants, so that the cause involved large expense to the parties and the public, and now, for the first time, it is objected that the court was without jurisdiction, and, therefore, the decree is a nullity. In support of this contention the following cases are cited: Brown, Adm'r, v. Wabash Ry. Co., 96 Ill. 297. In that case a bill in equity was filed against the Wabash Railway Co. and J. D. Cox, receiver, for causing the death of the plaintiff's intestate, while Cox was receiver. While Cox was receiver the railroad was sold, by decree of the court, to certain persons, and the deed of conveyance contained this clause: "That said estate and interest are hereby charged with and shall pass, by virtue of these presents, subject to the payment of all liabilities incurred in respect to the said railroad or its business, by the said Jacob D. Cox, as receiver, during the pendency of the legal proceedings above mentioned." The complainant, as appears from the opinion of the Appellate Court (Wabash R. R. Co. v. Brown, 5 Ill. App. 590), claimed a lien, by virtue of the above clause in the deed, which claim the defendants denied. The Appellate Court waived the consideration of this question as being immaterial, in view of its conclusion that the court had no jurisdiction to determine "a question of unliquidated damages for injuries growing out of a tort." The Supreme Court, while holding that there was

a lien, by virtue of the clause in the conveyance above mentioned, affirmed the decision of the Appellate Court, saying: "There is no doubt, under this clause of the deed, in regard to the question that the Wabash Railway Company held the property conveyed to it subject to the payment of such liabilities as Cox, the receiver, had incurred while he had the possession and entire control of the road. But, while this may be conceded, it by no means follows that a court of equity will assume jurisdiction of a case involving a question of unliquidated damages arising from a tort. Had the complainant brought an action at law against the receiver, and recovered a judgment, and thus settled the liability of the receiver, and also settled the amount of damages he was entitled to recover, and then brought a bill in equity against the Wabash Railway Company to subject the property it received from the receiver to the payment of the judgment, a different question would have been presented. But we are aware of no authority which would sanction the right to resort in the first instance to a court of equity. A court of chancery is not the forum in which a question of damages should be settled. If it was, the sacred right of trial by jury could easily be abrogated and set aside by merely resorting to such a tribunal."

We cannot find, either in the opinion of the Appellate Court or of the Supreme Court, that any objection was raised to the jurisdiction in the Circuit Court. It appears, however, from the opinion of the Appellate Court, that the complainant had, previous to the filing of his bill, filed a petition in the Circuit Court of Vermilion County, in a cause in which Cox was receiver, setting up the same claim, and that a demurrer was sustained to the petition, after which the complainant filed the bill in the Circuit Court of Sangamon County, without leave of the court.

Palys v. Jewett, 32 N. J. Eq., 302, cited by defendants' counsel, was a suit in equity against the receiver of the Erie Railway Company for damages for a personal injury alleged to have been occasioned by the negligence of the receiver's employees in the management of a train of cars.

The court, in a very elaborate, learned and apparently exhaustive opinion, held the general rule to be that such damages could not be ascertained in a court of equity, the court, Beasley, C. J., saying, among other things: "Nor am I aware that, with respect to torts to the person, it was ever so much as suggested, within such jurisdictions, that the compensation to be awarded, in consequence of such malfeasance, could, by force of any conjunction of circumstances, be ascertained in a court of equity." Ib. 311. Nevertheless, the court reversed the decree of the vice-chancellor, and decided the cause on its merits, for the following reasons stated in its opinion:   "The result of this review of the subject is, that in my judgment the plaintiff in this case was entitled, as a matter of right, to a jury trial. But the order refusing him such trial has not been appealed from, as it unquestionably might have been; and as both parties submitted to a trial before the vice-chancellor, I have concluded, though not without some misgiving, that the decision rendered in the court below is susceptible of being reviewed on the merits on this appeal."   And the court proceeded to consider the evidence in the cause, held that the plaintiff was entitled to recover, and reversed the decree of the vice-chancellor, which was for the defendant. In this case, as in the case last cited, both parties submitted to a trial before the chancellor, and, as before stated, without a request for a jury.

Counsel for defendants also rely on Fisher v. City of Chicago, 213 Ill. 268.   In that case the court, while holding that the trial court had jurisdiction, and affirming the judgment of that court, say, in the opinion:   "A judgment rendered by a court having no jurisdiction of the subject-matter is a mere nullity. Consent cannot give jurisdiction over subject-matter, and a court may take notice of the want of jurisdiction of its own motion." Counsel quote this language evidently on the assumption that the Circuit Court was so utterly without jurisdiction, without the power to hear and determine, in the present case, that its decree must be regarded as *coram*

*non judice.* In this assumption we cannot concur. We think there is a clear distinction between the proposition that a court of equity, on objection made, will not take jurisdiction in a case like the present, and the proposition that the court having, by consent of the parties, exercised jurisdiction, its decree is a nullity. Although parties, in a case at law, are entitled as of right to a jury trial, yet, if without objection they try the case before the court, without a jury, this is equivalent to express consent to such trial. Phillips v. Hood, 85 Ill. 450.

In Knickerbocker v. Benes, 195 Ill. 434, cited by counsel for petitioners, Benes filed an intervening petition in a suit in equity in which a receiver had been appointed by the court, setting up a claim for damages for personal injuries claimed to have been caused by the receiver's negligence. No objection being made, the court entertained the petition, heard evidence, sustained the claim, and assessed the petitioner's damages at the sum of $4,500, and declared that sum to be a lien on the premises involved in the principal suit, and the Supreme Court affirmed the decree, on appeal. Manifestly, if the lower court had been without power to hear and determine the cause, and the decree, therefore, a nullity, there could have been no such decision. See, also, Kennedy v. I. C. & L. R. R. Co., 3 Fed. R. 97, a case similar to the present.

The uniform holding is that, unless the objection that the remedy is at law is made by the pleadings, it will not be entertained in a reviewing court, except in cases in which the court is called on, for its own protection, to raise the objection. Nelson v. First National Bank, 48 Ill. 36; Chicago P. S. Exchange v. McCaughry, 148 ib. 372, 382.

In Crawford v. Schmitz, 139 Ill. 564, a bill was filed for the discovery of certain bonds, notes and choses in action, and for an accounting, etc. The defendants answered the bill, not objecting that there was a remedy at law, as it appears from the facts of the case there was. The court decreed for the complainant, and on appeal it was objected that there was a complete and adequate remedy at law, in

respect to which contention the court say: "It may be
that if the defendant had challenged the jurisdiction of
the court at the proper time and in the proper manner, it
would have been the duty of the court to dismiss the bill
and remit the complainant to a court of law for his remedy.
This, however, he did not do. Having answered without
challenging the jurisdiction of equity by alleging that the
complainant had an adequate remedy at law, he submitted
himself to such jurisdiction, and so far as he could do so
by his own consent, he conferred upon the court jurisdic-
tion to proceed, if it saw fit, to decree the complainant a
species of relief which might have been made the subject-
matter of a suit at law." The court, however, notes an
exception to the foregoing statement, saying: "In Dodge
v. Wright, 48 Ill. 382, this court said: 'We have several
times held that, except where the subject-matter is wholly
foreign to the jurisdiction of a court of chancery, and in-
capable of being brought before it even by consent, the
objection that there is an adequate remedy at law must be
insisted upon in the Circuit Court, and if not, it will be con-
sidered as waived when the record is brought here.' Kim-
ball v. Walker, 30 Ill. 482; Ohling v. Luitjens, 32 id. 23;
Stout v. Cook, 41 id. 447; Hickey v. Forristal, 49 id. 255."

It would seem that the remedy at law in the present
case is not complete and adequate, of itself, for the reason
that the law court could only render a judgment *in per-
sonam*, whereas the equity court can, as was done in the
present case, decree the damages, when ascertained, to
be a lien on the property in question in the principal case.
This is pointed out in the Kennedy case, *supra*. Adopting
the language of the court in Crawford v. Schmitz as appli-
cable here, "we are of the opinion that the relief sought in
this case is not so foreign to chancery jurisdiction as to
make it the duty of the court, for its own protection, to
refuse relief and dismiss the bill of its own motion." In
this, we are following the Supreme Court in Knickerbocker
v. Benes, *supra*, a case similar to the present, in which the
court did not feel called upon to interfere for its protec-
tion.

Shedd v. Seefeld.

Although the question is not free from difficulty, we decline to sustain the defendants' contention as to the want of jurisdiction.

Counsel for defendants contend that the court erred in holding that the burden was on defendants to prove, by a preponderance of evidence, that the apples did not arrive at the warehouse in good condition. We do not understand that the court so held. In support of this contention counsel refer to the remarks of the court, in deciding the cause, after the evidence was closed, when the court, abstract 204, uses this language: "I have concluded that it is not shown, by a preponderance of the evidence, that the petitioners' apples were not in a fairly good condition when they went into storage." This, clearly, is not a ruling as to the burden of proof. Besides the court, in a subsequent part of the opinion, after stating a certain fact which appeared in evidence, says: "I say this fact, in my mind, establishes with reasonable certainty, notwithstanding all this conflict in the evidence, that all the apples in question, except the four cars referred to, were in fairly good condition when they were stored, and that they were fit apples for cold storage." What the court said in his oral opinion is of no importance, so far as the court's decree is concerned, if the decree is sustained by the evidence.

It is objected that the court excluded and disregarded competent and material evidence. When Richard Mangan, witness for defendants, was on the stand, this question was asked him: "Mr. Mangan, you stated you had a number of barrels of apples stored in the Dreucker warehouse in the season of 1902-3. How many barrels did you have there?" An objection was sustained to the question, but no exception was preserved, when, after some discussion, counsel said: "I won't take up any more time, then. I simply desire to offer to prove by this witness that he stored the number of apples claimed by him in this warehouse; 2,500 barrels of Ben Davis apples that were shipped from Southern Illinois went into this warehouse in good condition, and were kept there under the same conditions

as to temperature, storage, etc., that the apples of pe-
titioners were, and that they went in about two weeks
earlier than the apples of the petitioners, and came out
in March, around the first of April, and were then sold
without being repacked, in good condition." The offer was
refused on objection made, and an exception preserved.
Prior to this offer of proof, and while petitioners were put-
ting in their evidence, Thomas F. Aiani, witness for peti-
tioners, testified that, in 1902, he had three cars of apples
and five cars of pears stored in the Dreucker warehouse;
that the first car went into the warehouse September 19th,
and that he visited the warehouse every day from Septem-
ber 19th till October 26th. He was then asked this ques-
tion: "What was the condition of the pears and apples,
or apples, that were found, at that time you went to see,
from day to day, on these floors?" Counsel for defend-
ants objected as follows: "Object to that. He is opening
up a line of testimony that may make a considerable differ-
ence in the case. If this testimony goes in, then we have
a right to bring any facts, and a right to bring every man
that has any fruit, or anything else, stored in that ware-
house during all this period." The court sustained the ob-
jection to the defendants' offer of proof, on the ground that
the evidence was of the same character as that offered by
the petitioners, and which had been excluded on the objec-
tion of the defendants. We think the rejection of defend-
ants' offer of proof was not error. When evidence for the
plaintiff has been excluded on the defendant's objection,
the defendant should not be heard to complain that evi-
dence of a like character offered by him is also excluded.
In Moyer v. Swygart, 125 Ill. 262, 267, a bill was filed to
set aside a will. The court say: "Both parties gave in
evidence the statements and conversations of decedent,
made by and had with him long before the making of the
alleged will, and neither party will now be heard to insist
such statements and conversations were not competent evi-
dence." It is well settled that a party cannot be heard to
complain of an instruction substantially the same as one

asked by himself. The principle is that a party will not be heard to complain of a ruling made against him which he has, in effect, induced the court to make against the opposite party. But, on the hypothesis that defendants are in a position to complain of the ruling, we are not prepared to hold that it was erroneous.

Babcock v. Brown, 28 Vt. 452, cited by defendant's counsel, is not in point.

It is objected that the court refused to consider the Daily Trade Bulletin offered in evidence by the defendants for the purpose of showing the market price of apples. The court admitted the Bulletin in evidence, and also evidence as to how the market prices therein were computed. Mr. Lichtenberger, the publisher of the Bulletin, testified that he got the published market values from witnesses; that he was not an expert on market values, and had no actual knowledge of sales at the prices published; but that in the publication he calculated to be very conservative and give fair wholesale market prices. The court, in deciding the cause, said: "Going to the question of the market value of apples in March and April, there is a great deal of conflict in that evidence. The evidence ranges on the different grades and different kinds of apples all the way from fifty cents to $4.00 per barrel for that period, and the lowest prices, in the main, are the prices shown by the market reports of the Trade Journal, whose publisher, Mr. Lichtenberger, I think it was, testified; and I expressed a good deal of doubt when these reports and the testimony was offered as to its competency, and I have been furnished no authorities that it is competent evidence; so, in reaching my conclusion, I disregard that evidence, as to the evidence given by Mr. Lichtenberger and that contained in his schedule of market reports, which was filed."

The evidence having been admitted, the objection goes only to the court's disregarding it. The defendants are not in a position to urge this objection, as it is not included in any of the assignments of error.

Counsel contend that the findings of the court are con-

trary to the evidence, and refer to the remarks of the court in deciding the cause as findings. The findings of the court, properly so called, are in the decree, and we cannot look outside the decree for the findings of fact by the court.

The evidence is too voluminous for specific reference, but we have read and considered it all carefully, and cannot say that the findings of fact by the court are manifestly against the weight of the evidence. In Dowie v. Driscoll, 203 Ill. 480, 488, it is said: "The law is well established in this State, that where a cause is heard by the chancellor, and the evidence is all, or partly, oral, it must appear that there is a clear or palpable error before a reversal will be had," citing cases; and in Bodelsen v. Swansen, 206 ib. 68, the court quotes the following from the opinion in Elmsted v. Nicholson, 186 Ill. 580: "The chancellor saw and heard the witnesses, knows their manner of testifying while on the stand, and is better qualified than we to judge of the weight to be given to their testimony. In chancery cases, where the evidence is conflicting, and heard in open court, the error in finding as to fact should be clear and palpable to authorize a reversal."

Lastly, counsel for defendants argue that the amount decreed as damages is excessive, by reason of a mistake in computation, as shown by the court's own findings, which the court used as a basis for computation. There is no assignment of error that the sum awarded as damages is excessive, nor any assignment which includes such objection. "Every error must be specifically pointed out,  *  *  * and an error not assigned is not open to review." Berry v. City of Chicago, 192 Ill. 154, 155.

Petitioners have assigned cross errors, which, after due consideration, we cannot sustain.

The decree will be affirmed.

*Affirmed.*